ELIZABETH ISLER, A MINOR, BY JACK ISLER, HER FATHER AND NATURAL GUARDIAN, AND ANOTHER v. DARRELL BURMAN AND OTHERS. CONSTANCE EVANGELICAL FREE CHURCH, APPELLANT.

232 N. W. 2d 818.

September 5, 1975—No. 45114.

*Stringer, Donnelly, Courtney, Cowie & Rohleder* and *Charles A. Flinn, Jr.,* for appellant.

*Robert W. Gislason,* for respondent plaintiffs.

*Babcock, Locher, Neilson & Mannella* and *Richard A. Beens,* for respondent defendants.

Heard before Otis, Peterson, and MacLaughlin, JJ., and considered and decided by the court en banc.

MacLaughlin, Justice.

This is an action to recover damages for personal injuries sustained by plaintiff Elizabeth Isler arising out of a snowmobile accident which occurred on New Year's Eve, December 31, 1969. The plaintiffs are Elizabeth Isler, a minor, by her father, Jack Isler, and Jack Isler, individually. Defendants are the Constance Evangelical Free Church, which sponsored the snowmobile party that Elizabeth was attending when she was injured; Darrel Burman, the driver of the snowmobile on which Elizabeth was riding; and Earl Burman, the owner of the snowmobile. The jury returned a verdict in which it found that defendant church was negligent; that defendant Darrell Burman was not negligent; and that Elizabeth Isler had not assumed the risk of the accident in riding on the snowmobile.[1] The jury awarded damages of $40,000 to Elizabeth and $1,066 to her father. Defendant church appeals from the judgment and from an order denying its motion for a new trial or for judgment n.o.v. We affirm.

Defendant Constance Evangelical Free Church (the church), located north of Anoka, Minnesota, sponsored a snowmobile party for members of its youth group and their invited guests on the evening of December 31, 1969. The responsibility for organizing and supervising the party had been delegated by the church to Rodney Erickson, who was employed by the church

---

[1] Prior to the time the case went to the jury, the trial court granted a motion for dismissal as to the snowmobile owner, defendant Earl Burman.

as its youth director. Elizabeth Isler, who was then 15 years old, attended the party as the guest of a member of the youth group.

In making arrangements for the party, Rodney Erickson had contacted Orville Aasness and had obtained permission to use the Aasness farm for the party. The day of the party Erickson went to the Aasness farm and generally inspected the various trails that were on the property. Erickson, however, never saw the exact spot where Elizabeth was injured, although he did look over the open field in which the accident occurred. On cross-examination, Erickson testified that the purpose of the inspection was to determine whether there were any hazards or dangers in the area where the snowmobiling was to take place.

On the night of the accident, the youth group met at the church for a prayer service. After the service, the group went to the Aasness farm. The group was not given any specific warnings although they were told to be careful. When the group arrived at the farm, it was dark and snowing lightly. When the snowmobiles started out, Rick Aasness, a member of the group who was familiar with the trails, led the way. Rodney Erickson, the youth director, was on the last snowmobile in the column of snowmobiles. Elizabeth rode as a passenger on a snowmobile driven by defendant Darrell Burman, who was then 18 years old. After Darrell and Elizabeth had been on the trail for about 20 minutes, they encountered a ditch that intersected the trail at right angles. Elizabeth was injured when the snowmobile went across the ditch and her body was suddenly thrust forward and then thrown back into a bar on the rear portion of the snowmobile. The ditch was about 4 feet wide and was variously described as from 1 to 3 feet deep. The ditch was on the established trail, and apparently several other snowmobiles had crossed the ditch that night without incident.

Defendant Darrell Burman testified that prior to the accident he had been traveling at 10 to 15 miles per hour and that as he approached the ditch he slowed down so that, as he went through the ditch, he was going 5 to 6 miles per hour. After he crossed

the ditch, he turned to see if Elizabeth was all right and at at time he found she was injured.

Elizabeth testified that prior to the accident the snowmobile had been traveling at 40 to 45 miles per hour, but she acknowledged that at an earlier deposition she had stated that the snowmobile had been traveling at speeds up to 60 to 70 miles per hour. She also testified that Darrell did not slow down at all before entering the ditch.

Elizabeth suffered a compression fracture of the first lumbar vertebra in which the bone was crushed to 50 percent of its normal size. The disc above the fracture was narrowed to 25 percent of normal, and the disc between the last thoracic vertebra and the first lumbar vertebra was narrowed and damaged. The crushing of the vertebra resulted in a permanent reversal of the angulation of the spine. Elizabeth also suffered a paralytic ileus which affected control of the bowels and bladder for several days after the accident. Elizabeth's back injuries are permanent, and she has a 15-percent permanent partial disability of the spine. Elizabeth occasionally wears a back brace and has had considerable pain and discomfort, and her activities have been substantially restricted since the accident.

The party at which Elizabeth was injured was planned by the church, and the people who brought snowmobiles were invited to do so by the church. While the record is not entirely clear, it appears that Erickson had assured the owners and operators of the snowmobiles that the trail had been laid out and inspected and that it was free from hazards and dangers. Members of the church were informed in advance of the party that it would be chaperoned and supervised by the church, and plaintiff Jack Isler gave Elizabeth permission to attend the party only after being informed that the party was to be sponsored, supervised, and chaperoned by the church.

A number of issues have been raised by the church on appeal. The church argues that the trial court erred in impos-

ing on it the duties of a possessor of land.[2] The trial court, in the following language, instructed the jury concerning the special duty of care owed by the owner or occupier of land to an invitee:

"* * * The Constance Evangelical Free Church is subject to liability for physical harm caused to its invitees by a condition on the land, if, but only if, it

"1. Knows of it or by the exercise of reasonable care could discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and,

"2. Should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"3. Fails to exercise reasonable care to protect them against the danger."

This instruction is based on Restatement, Torts 2d, § 343, and the only change in the instruction from the language used in the Restatement is that the words "The Constance Evangelical Free Church" were substituted for the words "[a] possessor of land" in the Restatement. The church contends that it was not a possessor of land within the meaning of the Restatement and that it should not have been charged with the duties of a possessor of land.

Restatement, Torts 2d, § 328E, defines a possessor of land as:

"(a)    a person who is in occupation of the land with intent to control it or

"(b)    a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

---

[2] This cause of action arose prior to our decision in Peterson v. Balach, 294 Minn. 161, 174, 199 N. W. 2d 639, 647 (1972), in which we held that "[t]he duty required of a landowner (or the person charged with responsibility for the condition of the land) as to licensees and invitees is no more and no less than that of any other alleged tortfeasor, and that duty is to use reasonable care for the safety of all such persons invited upon the premises, regardless of the status of the individuals."

"(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b)."

Restatement, Torts 2d, § 383, provides:

"One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land."

Further, Restatement, Torts 2d, § 387, provides:

"An independent contractor or servant to whom the owner or possessor of land turns over the entire charge of the land is subject to the same liability for harm caused to others, upon or outside of the land, by his failure to exercise reasonable care to maintain the land in safe repair as though he were the possessor of the land."

It is also helpful for the disposition of this case to note the comment to § 328E, which, in part, states as follows:

"*a.* 'Possession' has been given various meanings in the law, and the term frequently is used to denote the legal relations resulting from facts, rather than in the sense of describing the facts themselves. It is used here strictly in the factual sense, because it has been so used in almost all tort cases."

We recognized in Dishington v. A. W. Kuettel & Sons, Inc. 255 Minn. 325, 330, 96 N. W. 2d 684, 688 (1959), that one who carries on activities on land on behalf of a possessor has the same liabilities as the possessor, and "that one in control of the premises is under the same duty as the owner to keep the premises in safe condition."

We have concluded that the trial court did not err in its instruction. The church had planned the party and invited the people who brought snowmobiles. It had received permission from the owner to use the farmland for the snowmobile party

and had assumed the duty of inspecting the land to determine if it was free from hazards which would cause danger to those involved in the snowmobiling. Further, it had assured those involved that the party would be supervised and chaperoned by the church. Using the factual approach recommended by the Restatement to determine the meaning of the word "possessor," we hold that the church was a possessor of the land for the purposes of the snowmobile party and for the purposes of the resolution of the issues in this case, and that the instruction was appropriate under those circumstances.

(b)   The church also argues that the trial court erred in instructing the jury:

"When one undertakes to make an inspection for conditions on land which may be dangerous, he assumes the duty of making an adequate inspection and discovering those conditions which are discoverable by such reasonable inspection."

The church contends that this instruction regarding defendant's obligation to make an adequate inspection imposed a duty on defendant which it did not otherwise have and, in effect, penalized the church for undertaking an inspection which it had no duty to make in the first place. The church is clearly wrong in this contention. It is well established that one who voluntarily assumes a duty must exercise reasonable care or he will be responsible for damages resulting from his failure to do so. As stated in Glanzer v. Shepard, 233 N. Y. 236, 239, 135 N. E. 275, 276, 23 A. L. R. 1425, 1427 (1922):

"* * * It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all * * *."

See, also, Thelen v. Spilman, 251 Minn. 89, 86 N. W. 2d 700 (1957); Restatement, Torts 2d, § 323; 65 C. J. S., Negligence, § 4(4).

■   The church urges us to grant a new trial because of alleged prejudice caused when, on two different occasions during cross-

examination, the pastor of the church mentioned that the church carried liability insurance. At the time of the pastor's testimony, the church moved the trial court to grant a mistrial, which it declined to do. The church claims that the mention of the insurance clearly was prejudicial because the jury might have believed that the other defendants were uninsured and would have absolute knowledge that the church was insured. Without addressing the merits of this claim, we think it is sufficient to decide this issue on the basis that the fact of insurance was offered voluntarily by the pastor of defendant church and that he did so even though the record discloses that the pastor had been directed by the church's attorney not to mention insurance. One who procures error may not assert such error as the basis for obtaining a new trial. In re Estate of Forsythe, 221 Minn. 303, 22 N. W. 2d 19 (1946); 1B Dunnell, Dig. (3 ed.) § 419.

Other issues raised by the church, including (a) the claim that the trial court erred in limiting the defense of Elizabeth Isler's assumption of the risk to defendant Darrell Burman, driver of the snowmobile;[3] (b) the argument that Darrell Burman should be held negligent as a matter of law in spite of the jury verdict and that his negligence should be held to be the sole cause of plaintiff's injuries; and (c) the claim that the verdict is excessive, have all been considered by us and found to be without merit.

Affirmed.

---

[3] This case arose prior to our opinion in Springrose v. Willmore, 292 Minn. 23, 192 N. W. 2d 826 (1971).