## In re NORWEST BANK FIRE CASES.

### No. C7–87–472.

Court of Appeals of Minnesota.

Aug. 18, 1987.

Harold D. Field, Jr., Lowell J. Noteboom, David L. Lillehaug, Leonard, Street and Deinard, Minneapolis, for appellants PCL and City of Minneapolis.

Donald J. Brown, Winthrop & Weinstine, St. Paul, Barry L. Kroll, John D. Daniels, David M. Galanti, Chicago, Ill., for respondent IRI.

Heard, considered and decided by HUSPENI, P.J., and WOZNIAK and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Appellants challenge the trial court's grant of summary judgment, in which the trial court found, as a matter of law, that respondents did not assume a duty to protect third persons or their things from physical harm. We affirm.

## FACTS

On November 25, 1982, a fire of undetermined cause started in or around the partially demolished Donaldson's Department Store in downtown Minneapolis. The fire spread to the adjoining property, where it caused considerable damage to the Northwestern National Bank Building.

At the time of the fire, appellant City of Minneapolis owned the Donaldson's property, which was being demolished to make way for a new retail store and office project. Appellant PCL Construction, Ltd. was the general contractor for the project, and Minnesota Lumber and Wrecking Co., Inc. (MLW) had been awarded the subcontract for the demolition of the old Donaldson's building.

MLW carried general liability, auto, and workers' compensation insurance with the Home Insurance Company. MLW purchased the insurance through Home's agent, respondent Elster Insurance Agency, Inc., d/b/a Insurance Resources International (IRI). Home would pay IRI a bonus income whenever IRI reduced the frequency and severity of claims by an insured. To this end, IRI employed "loss control" consultants, who worked with specific insureds to detect and eliminate safety hazards.

David Strock worked as an IRI loss control consultant from 1978 to 1983, and was assigned to work with MLW in detecting potential safety hazards and recommending changes. Strock's supervisor stated Strock talked with MLW seven or eight times a year and devoted approximately 2% of his

time to MLW jobsites. Strock's stated he spent less than 10% of his time on MLW work. Strock's concerns included, but were not limited to, the safe storage of flammable items, the availability of fire extinguishers, the need for fences or barricades to keep pedestrians out of the work area, the storage of debris, and the appropriate use of safety equipment and clothing by the workers. In short, Strock "would try to look for anything that had the possibility of causing a loss."

MLW, however, did not consult with Strock before beginning work on a project, and Strock did not have a schedule or other formal or informal plan for visiting a specific jobsite or for following up on recommendations he gave. Strock did not even visit every MLW jobsite. MLW sometimes followed Strock's recommendations, and sometimes did not. In 1978, Strock determined that MLW's safety program was too informal and lacked documentation. MLW agreed with his evaluation, and further agreed to implement Strock's detailed suggestions for a comprehensive safety program. However, MLW never implemented Strock's ideas. Neither Strock nor IRI had authority to compel MLW to comply with Strock's suggested changes.

Prior to the fire, Strock visited the Donaldson's jobsite on two occasions. The first visit, on November 4, 1982, was at MLW's request and was for the sole purpose of inspecting predemolition damage to the Northwestern Bank Building. As was his practice, after the visit Strock submitted a written report to MLW in which he commented on the exterior wall damage and on the need for fire extinguishers wherever people were working. Neither the general contractor nor the city received copies of this or others of Strock's reports. Strock and the jobsite supervisor recalled a second visit less than one week before the fire, but Strock could not produce the written report that he prepared following that visit, and neither Strock nor the jobsite supervisor had a clear memory of either a specific purpose or result of that visit.

After the fire, Norwest Corporation and other plaintiffs sued to recover their losses from various defendants, including MLW, PCL Construction, and the City of Minneapolis. PCL and the city then brought third party actions against respondents IRI and Elster, asking for indemnification from respondents in the event PCL or the city were found liable to the plaintiffs. Apellants claimed IRI undertook to render inspection services to MLW, which services IRI recognized as necessary for the protection of third persons such as the plaintiffs, and that this undertaking gave rise to an assumption of duty by IRI to MLW. Further, appellants claimed IRI breached its assumed duty by failing to exercise reasonable care to protect its undertaking, either because IRI undertook to perform a duty owed by MLW to the plaintiffs or because harm was suffered due to MLW's reliance on IRI's undertaking, or both.

On motion for summary judgment, the trial court found, as a matter of law, that there was no undertaking under which IRI could be charged with assuming a duty to MLW. The trial court therefore granted respondents' motion for summary judgment. PCL and the City of Minneapolis appeal.

## ISSUE

As a matter of law, did the safety inspector assume a duty to third persons who might be injured?

## ANALYSIS

Summary judgment is proper when:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law.

Minn.R.Civ.P. 56.03. In reviewing summary judgment, this court applies the same standard the trial court uses in deciding whether to grant summary judgment and determines (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law. *Lindner v. Lund*, 352 N.W.2d 68, 70 (Minn.Ct.App.1984) (citing *Betlach v. Way-*

*zata Condominium,* 281 N.W.2d 328, 330 (Minn.1979)). The evidence must be viewed in the light most favorable to the party opposing summary judgment. *Lindner,* 352 N.W.2d at 70.

Appellants assert there are fact issues on whether Strock could foresee injuries resulting from dangers he failed to detect. *See Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 162 N.E. 99 (1928) (the existence or nonexistence of a duty depends upon whether the injury to the plaintiff was reasonably foreseeable), *cited in Cracraft v. City of St. Louis Park,* 279 N.W.2d 801, 813 (Minn.1979) (Scott, J., dissenting).

More specifically, appellants claim that IRI is liable for injuries resulting from a negligent inspection that tended to serve a class of persons that could be injured by dangers on the inspected premises.[1] It is plausible to recognize that any inspection is beneficial to someone who could be injured but for the discovery and correction of dangers. Appellants further claim that Strock's failure to detect and deal with safety hazards tended to enlarge the risk of injury because his failure destroyed any chance for control of the hazard.[2] This point is also plausible, in the sense that the risk of harm is enlarged by nondiscovery, relative to the situation if the risk were detected and corrected. Appellants also argue that IRI is liable because MLW, in reliance on the fact of inspection, failed to protect itself from hazards that Strock did not bring to its attention.[3] Here also we note the persuasiveness of the notion that any inspection creates a danger that others will let their guard down on undiscovered hazards.

Although there is a degree of plausibility in appellants' contentions, we are bound by a rule of law that confines the liability of an inspector, declaring that the extent of the inspector's common law duty is limited as a matter of law. *Cracraft,* 279 N.W.2d at 804, 806.[4] *Cracraft* held that general duties owed to the entire public rather than to a specific class of persons cannot form the basis of a negligence action, and unless circumstances exist to create a special duty to individuals or a class of individuals, a municipality cannot be held liable for negligent examination or inspection.[5] *Id.* In addition, whether a duty exists is a legal issue for resolution by the court, not the jury. *Germann v. F.L. Smithe Machine Co.,* 395 N.W.2d 922, 924 (Minn.1986).[6]

---

1. The Restatement (Second) of Torts expresses the rule as follows:
   One who undertakes * * * to render services to another which he should recognize as necessary *for the protection of* a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
   (a) * * *, or
   (b) he has undertaken to perform a duty owed by the other to the third person, or
   (c) * * *.
   Restatement (Second) of Torts § 324A(b) (1965) (emphasis added).

2. Under subpart (a) of section 324A, liability also results if Strock's "failure to exercise reasonable care increases the risk of such harm." Restatement (Second) of Torts § 324A(a) (1965).

3. Subpart (c) of section 324A provides that liability may also attach if "the harm is suffered because of reliance of the other or the third person upon the undertaking." Restatement (Second) of Torts § 324A(c) (1965).

4. In *Cracraft,* the majority opinion dominated dissenting opinions by three judges, which insisted that the matter of law approach to confine common law duties is not based on sound legal analysis but on policy conclusions aimed at eliminating certain claims against governmental tortfeasors. *See Cracraft,* 279 N.W.2d at 808–813 (Kelly, Yetka, and Scott, J.J., dissenting).

5. The majority opinion in *Cracraft* expressly rejected the distinction between duties owed by a municipality and duties owed by a private actor. *See Cracraft,* 279 N.W.2d at 804 ("the distinction between public duty and special duty is not a doctrine unique to governmental torts"); *id.* at 805 ("the distinction between public duty and special duty applies to alleged private tortfeasors as well as alleged public tortfeasors"); *id.* at 806 ("[t]he concept of a special duty is not unique to government torts," and "[i]t is somewhat unfortunate that the terms 'public' duty and 'special' duty have been used, inasmuch as they give the misleading impression that the distinction applies only to governmental tortfeasors").

6. In deciding whether a duty exists, the supreme court has employed the Restatement analysis suggested by appellants. *See, e.g., Walsh v. Pagra Air Taxi, Inc.,* 282 N.W.2d 567, 570–71 (Minn.1979).

Under *Cracraft*, IRI cannot be found to have assumed a duty to protect the plaintiffs when there was no evidence that Strock had actual knowledge of the danger that led to later injury and no evidence that the plaintiffs knew of the inspection or that either the plaintiffs or MLW relied on the inspection. *See Cracraft*, 279 N.W.2d at 806–07 (although no bright line exists for determining when an inspector has assumed a duty of care to third persons, factors tending to impose such a duty include actual knowledge of a dangerous condition, reasonable reliance on the inspector's representations, and conduct that causes the persons to forego other alternatives of protecting themselves).

The trial court rejected each of the three bases of liability pointed out by appellant and described in the Restatement of Torts. First, as to the class of persons served, the court concluded that Strock's inspections were performed in the interest of the entity that employed him, and not for the special benefit of individuals who later might be injured as a result of dangers on the premises, even if the inspections also served the general public interest. In contrast, the trial court pointed to cases where the inspections were performed for a specific group of protected persons. *See Isler v. Burman*, 305 Minn. 288, 232 N.W.2d 818 (1975) (duty was assumed where the purpose of youth group leader's inspection of snowmobile trails was to determine whether there were any hazards or dangers where the plaintiff and members of her group would be snowmobiling).

*Cracraft* supports the trial court's view that the inspection here was so limited in purpose that it did not extend to the kinds of hazards that finally endangered the Northwestern National Bank Building. *See also Walsh*, 282 N.W.2d at 570 (in dictum, the supreme court noted that the city could limit the scope of its duty to act by restricting the services it undertook to perform). *Diker v. City of St. Louis Park*, 268 Minn. 461, 467, 130 N.W.2d 113, 117 (1964) (city's act in making skating rink available to the general public without charge did not create a duty to supervise people skating on the rink, and evidence did not support a finding that the city had assumed such a duty). Similarly, reserving the right to inspect does not subject the inspector to liability. *See, e.g., Jeffries v. United States*, 477 F.2d 52, 56 (9th Cir. 1973).

Second, the trial court concluded that an inspection that fails to detect dangers does not by itself enlarge the risk of harm. *See Cracraft*, 279 N.W.2d at 808 (even assuming the dangerous instrumentality was present at the time of inspection, the risk of explosion was the same both before and after the inspection). Thus, because the trial court was convinced that the danger was not changed by Strock's conduct, any failure on his part to detect and warn did not enlarge the risk.

Third, the trial court found that the mere fact of inspection does not give rise to an inherent risk that the inspected actor will forego its own protective measures. In fact, the court noted that MLW had its own safety personnel, conducted its own inspections, listed Strock only as "back-up" on safety matters, was free to reject Strock's safety recommendations, and in fact had previously rejected a comprehensive safety program that Strock developed for them.[7]

We believe the trial court's analysis is consistent with the rule of law found in *Cracraft*. Although appellant insists on a much more general approach to the facts of this case, based on the Restatement's concept of an "undertaking," we find the *Cracraft* rationale on assumed or special duties to be controlling.

Applying *Cracraft*, appellants have not shown any "additional indicia" that would create genuine issues of material fact on whether IRI assumed a duty to protect a "particular class of persons" from the risk

---

7. The court found there was no evidence that the scope of Strock's inspection included topics of security or protection against vandalism. This observation is erroneous, given Strock's own testimony on the issue. However, this fact does not convert Strock's inspection from one conducted largely for the benefit of the insurer into a security and vandalism inspection aimed at the adjoining buildings.

of harm. *Cracraft,* 279 N.W.2d at 806. Appellants presented no evidence that Strock had actual knowledge of any specific hazard or dangerous condition that would tend to "impose a duty of care." *Id.* The circumstances do not support a conclusion that Strock assumed a duty owed by MLW to third persons that he should have recognized as "necessary for the protection of a third person or his things." *See* Restatement (Second) of Torts § 324A(b) (assumption of duty owed by the other to the third person results in liability). Nor was there any indication that Strock did anything "to increase the risk" of harm. *Cracraft,* 279 N.W.2d at 808; *see also* Restatement (Second) of Torts § 324A(a) (1965) (negligence that increases the risk of harm results in liability).

Finally, there is no evidence that any plaintiff knew of the IRI inspections or that the inspection caused either MLW or any plaintiff to "forego other alternatives of protecting themselves." *Cracraft,* 279 N.W.2d at 807; *see also* Restatement (Second) of Torts § 324A(c) (1965) (harm suffered because of reliance of the other or the third person results in liability). To the contrary, the evidence showed that although MLW generally cooperated with IRI's efforts, Strock had no authority to require MLW to follow his recommendations, and the evidence showed that in the past MLW completely disregarded a safety program that Strock developed for the firm. MLW did not consult with Strock before beginning work on the Donaldson's project, and did not depend on or expect such consultation. MLW listed IRI as a safety backup on the Donaldson's project, but IRI was not aware that MLW had given it that designation. Under these circumstances, IRI cannot be held liable for negligent examination or inspection of the MLW premises, and was entitled to summary judgment.

## DECISION

The trial court properly entered summary judgment, determining that respondent did not have a duty to protect appellant's premises.

Affirmed.