Ronald PRELVITZ, Appellant,

v.

Jeffrey Allan MILSOP, Troy Delman Larson, Delman Elwood Larson, Ronald Allan Johnson, The United States of America, Appellees.

U.S.A.,

v.

Troy Delman LARSON & Delman Elwood Larson.

Troy D. LARSON & Delman E. Larson,

v.

Ronald PRELVITZ.

U.S.A.,

v.

Jeffrey Allan MILSOP & Ronald A. Johnson,

No. 86–5417.

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1987.

Decided Oct. 26, 1987.

Joseph M. Boyle, International Falls, Minn., for appellant.

Mack Player, Washington, D.C., for appellees.

Before ROSS, Circuit Judge,[*] HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

ROSS, Circuit Judge.

Ronald Prelvitz appeals from the district court's[1] grant of summary judgment on his action brought pursuant to the Federal Tort Claims Act. Prelvitz's claim arose from injuries he received in an automobile accident on September 15, 1984. Prelvitz alleged that his injuries were the result of the negligence of a United States Customs Inspector in suggesting an intoxicated driver drive the car in which Prelvitz was riding. For the reasons set forth below, we affirm.

**Background**

At about 10:30 p.m. on September 14, 1984, Prevlitz and three others, Jeffrey Milsop, John Marvin, and Bret Colden, drove in Milsop's car from Warroad, Minnesota to the Sprague Hotel in Sprague, Manitoba, Canada. There the four drank various amounts of alcoholic beverages.[2] After approximately two hours, Colden became obviously intoxicated, was refused further service and was asked to leave. The four bought three twelve packs of beer and headed back to Warroad with Colden driving Milsop's car.

At approximately 1:00 a.m., the group arrived at the Warroad Port of Entry, where United States Customs Inspector James M. Bishop was on duty. Inspector Bishop recognized the four young men, as they were friends with his son. Inspector Bishop knew that Milsop was a minor. Inspector Bishop approached the car and asked the group whether they had any alcohol to declare. On being informed that they had beer in the trunk, Inspector Bishop told them that someone would have to pay duty on it. All four went into the port of entry office, and Colden paid the duty.

After speaking with Inspector Bishop for approximately fifteen minutes, the group prepared to continue back to Warroad. Upon noticing that Colden was under the influence, Inspector Bishop recommended that he not drive.[3] The parties disagree as to whether Inspector Bishop said anything further. However, considering the evidence in the light most favorable to Prelvitz, *see Kegel v. Runnels*, 793 F.2d 924, 926 (8th Cir.1986), the affidavits show that Inspector Bishop then suggested that Milsop drive since it was his car, but did not order him to do so.

The group departed from the port of entry station with Milsop driving. The accident occurred approximately four miles from the station when Milsop attempted to make a right turn. In executing the maneuver, Milsop first swung the car to the left, and then began to turn right. At the same time, an automobile driven by Troy Larson overtook the Milsop vehicle from the rear and attempted to pass on the right side. The Larson vehicle struck the Milsop vehicle in mid-turn. All the occupants of both vehicles, including Prelvitz, were injured.

Blood alcohol tests administered two and one-half hours after the accident showed Colden's blood alcohol concentration to be 0.13, Milsop's 0.06, Prelvitz's 0.04 and Mar-

---

[*] The Honorable Donald R. Ross assumed senior status on June 13, 1987.

1. The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

2. At the time, Colden and Prelvitz were 19 years old and Milsop and Marvin were 17 years old. Minnesota's legal drinking age was 19, while Manitoba's was 18. Despite being underage, Milsop and Marvin were served alcohol at the Sprague Hotel.

3. Inspector Bishop later testified that he thought Colden was "incapable of driving." He also thought that Milsop showed effects of drinking, but less so than Colden. Inspector Bishop stated that he thought Milsop was capable of driving. He thought that John Marvin showed the effects of the alcohol the least.

vin's 0.03.[4] A highway patrolman at the scene of the accident stated that the effects of alcohol on Milsop were obvious.

Prelvitz brought this action against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b), alleging that Inspector Bishop, in seeking to designate a driver for the group, assumed a duty to protect Prelvitz. Prelvitz further alleged that Inspector Bishop breached this duty in negligently suggesting that Milsop drive. The district court granted the government's motion for summary judgment, and Prelvitz appeals.

### Discussion

Under the Federal Tort Claims Act, the United States is liable for the negligence of its employees under circumstances where a private individual would be liable under the state law where the incident occurred. 28 U.S.C. § 1346(b). Therefore, the question presented in this case is whether under Minnesota law Inspector Bishop owed some duty to protect Prelvitz on the night of the accident, and whether he breached that duty.

■ The general rule of law in Minnesota is that a person has no common law duty to protect another from injuries from a third person absent some kind of "special relation." See Andrade v. Ellefson, 391 N.W.2d 836, 841 (Minn.1986). Prelvitz does not attempt to argue that Inspector Bishop had some special duty to protect any of the four young men solely by virtue of Bishop's position as Customs Inspector. Indeed, Inspector Bishop had no greater duty than a private citizen to assure that the group had a safe ride home.[5] Rather, Prelvitz argues that although Inspector Bishop initially had no duty to act, he assumed a "special" duty towards Prelvitz and the

others when he took it upon himself to designate which of the group should drive. See Cracraft v. City of St. Louis Park, 279 N.W.2d 801, 806 (Minn.1979).

In Cracraft, the Minnesota Supreme Court set forth the "special duty" doctrine as follows: "once a duty to act for the protection of others is voluntarily assumed, due care must be exercised even though there was no duty to act in the first instance." Id. Cracraft involved a suit against a city for negligently failing to discover a fire code violation when inspecting a high school. Two students were killed and a third injured when a subsequent explosion occurred because of the fire code violation. Affirming the grant of summary judgment on behalf of the city, the Cracraft court determined that a special duty of care to protect the individual students from fire was not created by the city's fire inspection. Id. at 807–08. In reaching its decision, the court set forth four factors to be considered in determining whether a special duty has been created or assumed: 1) whether the governmental entity had actual knowledge of the dangerous condition; 2) whether the third person reasonably relied on the government officials' conduct or representations; 3) whether the governmental entity had a statutory duty to protect a particular class of persons rather than the public as a whole; and 4) whether the government's action increased the risk of harm. Id. at 806–07.

■ Applying the Cracraft factors to the instant case, we determine that no special duty to protect the four young men was created or assumed by Inspector Bishop. First, Inspector Bishop had no actual knowledge of the dangerous condition.

---

4. Under MINN.STAT.ANN. § 169.121 (West 1986), a person is considered under the influence when that person's blood alcohol concentration is 0.10 or more. A blood alcohol concentration of more than 0.05 and less than 0.10 is relevant evidence that the person is under the influence. A blood alcohol concentration of 0.05 or less is prima facie evidence that the person is not under the influence.

5. As a Customs Inspector, Inspector Bishop had no statutory duty to enforce the Minnesota traf-

fic laws or to arrest or detain persons believed to be driving under the influence. Unlike local or state police, customs officials are not " 'general guardians of the public peace.' " United States v. Rivera, 595 F.2d 1095, 1097–98 (5th Cir.1979) (quoting United States v. Jackson, 423 F.2d 506, 508 (9th Cir.1970)). Rather, customs officials' duties generally concern preventing the importation of contraband and aliens into the United States. Id. at 1098.

Constructive knowledge is insufficient to impose a special duty. *Andrade, supra,* 391 N.W.2d at 841. Inspector Bishop testified that he thought Milsop was capable of driving, and therefore he had no actual knowledge that Milsop would not be a safe driver.

Second, there is no indication that Prelvitz relied on Inspector Bishop for appointing a safe driver, thereby foregoing other alternatives for protecting himself. Nor is there evidence that Inspector Bishop made any representation to Prelvitz that he was securing for him a safe ride home.

Nor is the third factor present in this case. Inspector Bishop was under no statutory duty to enforce Minnesota's driving under the influence laws or to arrest or detain intoxicated drivers.

Finally, Inspector Bishop's acts did nothing to increase the risk of harm to Prelvitz. On the contrary, Inspector Bishop decreased the risk of harm not only to the four young men, but to others on the road. Inspector Bishop acted to substitute for an obviously intoxicated driver one who appeared capable of driving and who in fact had a blood alcohol content of less than half that of Colden.

■ Prelvitz further argues that Inspector Bishop owed a duty to protect Prelvitz pursuant to the "good Samaritan" doctrine as set out in Section 324A of the Restatement (Second) of Torts. Section 324A provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

We find that section 324A is inapplicable to the present case because none of the elements necessary to create a duty under that section are present here. First, there was no "undertaking" by Inspector Bishop on behalf of the young men. We find that a mere suggestion that a particular person drive, especially by someone who lacks authority to enforce the suggestion, would be insufficient under Minnesota law to constitute an undertaking. The cases relied on by Prelvitz support this finding that a mere suggestion is not enough. For example, in *Walsh v. Pagra Air Taxi, Inc.,* 282 N.W.2d 567, 570–71 (Minn.1979), the court found that the defendant was liable to an airplane owner for negligently failing to provide fire protection service when the owner's airplane was destroyed by fire. The court determined that the defendant had assumed a duty to provide the airplane owner fire protection services when it entered an operating agreement with the city providing that it would perform firefighting services for all users of the airport. *See also Isler v. Burman,* 305 Minn. 288, 232 N.W.2d 818, 821–22 (Minn.1975) (church voluntarily inspected area where snowmobile party was to take place for dangerous conditions); *Thelen v. Spilman,* 251 Minn. 89, 86 N.W.2d 700, 706 (1957) (driver negligently signaled to following driver that it was safe to pass); *Abresch v. Northwestern Bell Tel. Co.,* 246 Minn. 408, 75 N.W.2d 206, 211–12 (1956) (telephone company voluntarily assumed responsibility for notifying fire department of fire on plaintiff's premises). The actions for which liability was imposed in these cases obviously consisted of much more than mere suggestions.

Nor are the other elements which are necessary for creating a duty under section 324A present in this case. As previously noted, there is no evidence that Prelvitz relied on Inspector Bishop for securing for him a safe driver, or that Prelvitz bypassed other alternatives for protecting himself in reliance on Inspector Bishop's acts. Additionally, Inspector Bishop decreased rather than increased the risk of harm to the group. In this regard, we find applicable this court's recent decision in *LaFond v.*

*United States,* 781 F.2d 153 (8th Cir.1986). In that case, the plaintiff sued the United States for injuries he received when he slipped and fell on an icy sidewalk in front of a post office. Post office personnel had shovelled snow from the walk, but subsequent thawing and freezing had caused ice patches to form. This court rejected the plaintiff's claim that the post office employees had assumed a duty to keep the sidewalk clear and had been negligent in the performance of this duty. *Id.* at 154–55. This court noted that the Minnesota Supreme Court had rejected a similar argument in a previous case, finding that as a matter of public policy property owners should not be discouraged from attempting to clear sidewalks by imposing liability on them where otherwise no liability would exist. *Id.* at 155 (citing *Abar v. Ramsey Motor Serv., Inc.,* 195 Minn. 597, 263 N.W. 917 (1935)). Likewise, we believe that persons who otherwise have no liability should not be discouraged from making reasonable efforts to remove an obviously intoxicated driver from behind the wheel.

In conclusion, there are no facts which would establish liability on behalf of Inspector Bishop under Minnesota law. Consequently, we hold that the district court properly granted the government's motion for summary judgment.

■ As an alternative basis for our affirmance of the district court's grant of summary judgment, the government urges that, assuming *arguendo* Inspector Bishop owed some duty to protect the young men, his act in suggesting that Milsop rather than Colden drive constituted a discretionary function. Under 28 U.S.C. § 2680(a), acts performed by government employees which are discretionary functions are immune from liability. This court has previously stated that "[a]lthough the federal government has a duty to enforce the law, the means by which it proceeds to do so are protected by the discretionary function exception to the FTCA." *Abernathy v. United States,* 773 F.2d 184, 188 (8th Cir.1985). In that case, we held that the government engaged in a discretionary function in failing to commit a person with known danger-

ous propensities because "[a]ny decision to seek to commit Voice would rest upon an exercise of judgment by the responsible government agency." *Id.* Likewise, in this case, any decision to attempt to detain the four young men or to appoint a different driver would necessarily require an exercise of judgment by Inspector Bishop and therefore is protected as a discretionary function.

### Conclusion

For the reasons set forth above, we determine that the entry of summary judgment on behalf of the United States was proper. Therefore, the judgment of the district court is affirmed.

