Claude W. SATTERLUND and Sandra Satterlund, Plaintiffs,

and

Aetna Casualty and Surety Company of America, Plaintiffs in Intervention,

v.

MURPHY BROS', INC., an Illinois Corporation, Deslauriers, Inc., an Illinois Corporation, and Great Lakes Gas Transmission Co., Inc., a Delaware Corporation, Willbros Butler Engineers, Inc., a Delaware Corporation, Defendants.

DESLAURIERS, INC., an Illinois Corporation, and Great Lakes Gas Transmission Co., Inc., Willbros Butler Engineers, Inc., a Delaware Corporation, Defendants and Third–Party Plaintiffs,

v.

J.R. JENSEN & SONS, INC., Third–Party Defendant.

Civ. No. 5–93–183.

United States District Court, D. Minnesota, Fifth Division.

July 20, 1995.

Mark K. Blongewicz, Tulsa, OK, for Willbros Butler Engineers, Inc.

Steven W. Schneider, Duluth, MN, for Murphy and Great Lakes Gas Transmission Co.

Nathan W. Hart, St. Paul, MN, for Deslauriers, Inc.

ERICKSON, United States Magistrate Judge.

## I. *Introduction*

This matter is before the Court, in accordance with the parties' consent pursuant to Title 28 U.S.C. § 636(c), upon the Motion of the Defendant Willbros Butler Engineers, Inc. ("Willbros"), for the entry of Summary Judgment against the Plaintiffs or, in the alternative, against the Defendant Murphy Bro's, Inc. ("Murphy").

A Hearing on the Motion was conducted on July 13, 1995, at which Willbros appeared by Mark K. Blongewicz, Esq., Murphy and the Defendant Great Lakes Gas Transmission Company ("Great Lakes") appeared by Steven W. Schneider, Esq., and the Defendant Deslauriers, Inc. ("Deslauriers") appeared by Nathan W. Hart, Esq. The remaining parties to this action took no position on the Motions and did not appear.

For reasons which follow, we grant Willbros's Motion for Summary Judgment against the Plaintiffs.[1]

## II. *Factual and Procedural Background*

This action arises out of a work-related injury that the Plaintiff Claude Satterlund ("Satterlund") sustained when he fell and was impaled upon a length of rebar that had been covered by an allegedly defective, plastic safety cap. As here pertinent, Satterlund contends that Willbros is liable for its negligence in the performance of its inspection duties on the job site.[2] Great Lakes, which is the owner of the job site, contracted with Murphy for the construction of a gas compressor station, and it retained Willbros to inspect the progress of the contractors' work so as to assure that the contractors complied with the job specifications and blue prints. Given the fact that the gas pipeline, which the compressor station was to service, would remain functioning throughout the construction process, safety at the work site was a significant concern.

---

1. The granting of Willbros's Motion against the Plaintiffs obviates the need for any ruling on Willbros's alternative Motion, which seeks to hold Murphy liable to indemnify Willbros for any damages that the Plaintiffs might recover against Willbros. Of course, in the absence of a viable claim by the Plaintiffs against Willbros, any right of indemnification, which Willbros may have against Murphy, would be superfluous. All of the interested parties so concede.

2. Willbros involvement in this litigation was subjected to a significant hiatus, which followed the Plaintiffs' filing a Notice of Dismissal, without prejudice, as to Willbros, on January 13, 1994. Subsequently, on September 29, 1994, the parties jointly filed a Motion to vacate the voluntary dismissal and, by Order dated October 4, 1994, the Motion was granted and Willbros was rejoined as a party-Defendant.

In this respect, Great Lakes' contract with Murphy delegated the responsibility for job site safety to Murphy as the general contractor for the project. Among the General Conditions of the construction contract, that existed between Great Lakes and Murphy, was the following provision:

[Murphy] shall adequately protect the property of [Great Lakes] and others at the site of or adjacent to the Work. [Murphy] shall take all necessary precautions for the safety of the employees on the Work and shall comply with all applicable provisions of Federal, State and Municipal safety laws and regulations to prevent accidents or injuries to persons or damage to property on or about or adjacent to the premises where the Work is being performed.

In contrast, Willbros's contract with Great Lakes, at Paragraph 3.0, contained the following description of the scope of Willbros's inspection services:

The construction activities to be inspected include civil/structural, mechanical, piping, electrical, and instrumentation work. This inspection is to be performed to the end that the construction proceed in a timely manner in accordance with the project's schedule and will be in accordance with the Contract Documents which include the general conditions, the specifications, drawings, and conditions experienced in the filed.

[Willbros] will not supervise or direct the construction contractors utilized by Great Lakes to perform the station construction. [Willbros] will in no way exercise any control over the construction means, methods, or techniques used by these contractors nor will [Willbros] be responsible for enforcing federal, state, or other safety requirements in connection with work performed by these contractors.

All parties agree that the plastic protection caps, which were inserted on the exposed rebar, were not specified in the construction contract documents, but had been installed at the direction of the Third–Party Defendant J.R. Jensen & Sons, Inc., who was Satterlund's employer. According to Willbros, the language of its contract with Great Lakes exempts Willbros from any legal duty to undertake safety inspections for the benefit of Great Lakes or, for that matter, for the benefit of anyone else.

In response, Murphy and Deslauriers argue that the language, upon which Willbros relies, is ambiguous in that the first paragraph holds Willbros responsible for assuring that the contractors perform their work in accordance with the contract documents. Since Murphy, as the general contractor, was obligated to "take all necessary precautions for the safety of the employees at the work site," and since Willbros was obliged to inspect the work in progress, so as to assure that the contractors' complied with their construction duties to Great Lakes, Willbros necessarily had the responsibility to inspect Murphy's job safety program. While recognizing that this contractual interpretation is wholly inconsistent with the Willbros's express exemption from the conduct of safety inspections, as that exemption is contained in Willbros's contract with Great Lakes, Murphy and Deslauriers argue that these provisions necessarily conflict and, thereby, raise a genuine issue of material fact as to Willbros's legal duty to the Plaintiffs.

As an alternative argument, Murphy and Deslauriers rely on the authority of *Kruchten v. United States*, 914 F.2d 1106, 1109 (8th Cir.1990), and *Walsh v. Pagra Air Taxi, Inc.*, 282 N.W.2d 567 (Minn.1979), as holding "that a person who voluntarily undertakes to render services which he should recognize as necessary for the protection of another is subject to liability for physical harm resulting from his failure to exercise reasonable care to perform his undertaking." They go on to assert that "Willbros voluntarily assumed some responsibility for safety" because, on occasion, a Willbros inspector "would raise safety concerns regarding workmen smoking, workmen not wearing hard hats and a discussion regarding a particular ditch that presented safety concerns." In response, Willbros notes that each of the incidents, upon which Murphy and Deslauriers rely as reflecting Willbros's voluntary assumption of workplace safety, occurred after the incident involving Satterlund, and that the inconsequential relationship of Will-

bros's interest in safety is revealed in the testimony of Daniel V. Holmes, who was the project superintendent for Murphy. In particular, Willbros notes the following exchange:

> MR. BLONGEWICZ [Counsel for Willbros]: Okay. Did you or anyone at—did you, on behalf of Murphy Bros., come to rely on Willbros to—to assume any responsibility for safety?
>
> A. Never.

In addition, Willbros has submitted the Affidavit of one of its Vice Presidents, which avers that:

> [Willbros], its agents and employees complied with paragraph 3.0 of Exhibit A during the construction of Defendant [Great Lakes's] compressor station number 5. In particular, [Willbros], its agents and employees did not attend or conduct safety meetings for the construction, nor did it advise any contractors, subcontractors, their employees or agents in the method or the manner of the construction.

No countering Affidavits were submitted by either Murphy or Deslauriers, which refute these averments, apart from the referenced involvement of Willbros's inspector in commending the use of hard hats, the observance of no-smoking conditions, and the safety concerns attendant to the excavation of a ditch.

### III. *Discussion*

A. *Standard of Review.* The Plaintiffs have premised their claim against Willbros on the doctrine of negligence and, to be successful in that claim, the Plaintiffs must show: "(1) a duty; (2) breach of that duty; (3) a causal connection between the breach and injury; and (4) injury in fact." *Sulik v. Total Petroleum, Inc.,* 847 F.Supp. 747, 750 (D.Minn.1994), citing *Hudson v. Snyder Body, Inc.,* 326 N.W.2d 149, 157 (Minn.1982). In this context, a "duty" is "an 'obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.'" *Rasmussen v. The Prudential Ins. Co.,* 277 Minn. 266, 268, 152 N.W.2d 359, 362 (Minn.1967), quoting *Prosser, Torts (3d Ed.),* § 53; see also, *Safeco Ins. Co. of America v. Dain Bosworth Incorporated,* 531 N.W.2d 867, 871 (Minn.App.

1995). Therefore, "[a]ctionable negligence is a failure to discharge a legal duty to the one injured." *Rasmussen v. The Prudential Ins. Co.,* supra, 277 Minn. at 268, 152 N.W.2d at 362.

Under Minnesota law, whether a legal "duty" exists is, generally, "an issue for the court to determine as a matter of law." *Larson v. Larson,* 373 N.W.2d 287, 289 (Minn. 1985); see also, *Kim v. Ingersoll Rand Company,* 921 F.2d 197, 199 (8th Cir.1990); *Sulik v. Total Petroleum, Inc.,* supra at 750, citing *Carlson v. Mutual Service, Inc.,* 494 N.W.2d 885, 887 (Minn.1993); *Thompson v. Campbell,* 845 F.Supp. 665, 676 (D.Minn.1994). The determination of whether a legal duty exists depends "on the relationship of the parties and the foreseeable risk involved" and, "[u]ltimately, the question is one of policy." *Erickson v. Curtis Inv. Co.,* 447 N.W.2d 165, 168–69 (Minn.1989); *Yunker v. Honeywell, Inc.,* 496 N.W.2d 419, 421 (Minn.App. 1993), pet. for rev. denied (Minn. April 20, 1993).

■ B. *Legal Analysis.* Murphy and Deslauriers claim that Willbros owed the Plaintiffs a duty to inspect for unsafe conditions on the job site by virtue of Willbros's contractual obligations to Great Lakes, and because of a doctrinal policy that would hold one, who voluntarily assumes an obligation to perform a duty, liable for any breach in the performance of the duty so assumed. Neither contention has merit.

While inventive, we find the contractual construction, that Murphy and Deslauriers would have the Court adopt, to be tortured, at best. Simply put, in order to reach the result that Murphy and Deslauriers promote, one would have to read the contractual provisions at issue with an eye toward creating an ambiguity where none otherwise exists. We can accept Willbros's general obligation, as the project's construction inspector, to enforce the provisions of the construction contract, including its specifications and its general conditions. We can also agree that, absent some disclaimer, such an inspection obligation would include the enforcement of Murphy's duty to "take all necessary precautions for the safety of the employees" at the

job site. These propositions are a necessary and reasonable inference from the first subparagraph to Paragraph 3.0 of Willbros's contract with Great Lakes.

Where we part company with Murphy and Deslauriers, however, is at the point that they treat the second subparagraph of the same Paragraph 3.0 as a nullity. Rather than creating an ambiguity, the second subparagraph to Paragraph 3.0 resolves, beyond any reasonable dispute, the intention of the contracting parties to exempt Willbros from any responsibility in inspecting the job site for infractions of "federal, state or other safety requirements in connection with the work performed by these contractors." Finding, as a matter of law, that the language of Paragraph 3.0 is not reasonably susceptible of more than one construction, either alone or in conjunction with the provisions of Murphy's contract with Great Lakes, we are not at liberty to treat the language as ambiguous, or to construe the plain meaning of that language out of existence. *LaSociete Generale Immobiliere v. Mpls. Comm. Dev.*, 44 F.3d 629, 635–36 (8th Cir.1994) ("Under Minnesota law, the construction and effect of a contract presents a question of law, unless an ambiguity exists," and "[t]he initial question of whether a contract is ambiguous is a question of law to be decided by the trial court."), *cert. denied,* —— U.S. ——, 116 S.Ct. 58, —— L.Ed.2d —— (1995), citing *Trondson v. Janikula,* 458 N.W.2d 679, 681 (Minn. 1990), and *Lamb Plumbing & Heating Co. v. Kraus–Anderson,* 296 N.W.2d 859, 862 (Minn.1980). Therefore, no legal duty to protect Satterlund from injury was imposed upon Willbros, under any of the contractual provisions which governed the construction at the site at which he was injured.

■ Moreover, we find no basis to conclude that Willbros voluntarily undertook the obligation to protect workers at the job site from the risks of injury. While, undoubtedly, the law of Minnesota imposes an obligation to use reasonable care as to those legal duties that a person should voluntarily assume, Murphy and Deslauriers would ex-

pand that doctrine beyond recognizable limits and in ways which would contravene the unmistakable interests of public policy.

At best, the safety remarks of Willbros's inspector were incidental, and were consistent with legitimate safety concerns which unavoidably arise in the performance of construction activities in close proximity to volatile gases. None of the testimony, that Murphy and Deslauriers draw to our attention, demonstrates that Willbros appreciably, let alone effectively, usurped the safety responsibilities of Murphy, or that Murphy, or any one else, viewed Willbros as the safety inspector on the job. Rather, the scant occasions, on which Willbros's inspector made comments on matters of safety, do not rise above his sound, but passing interest in job safety—an interest that is wholly compatible with humanitarian goals and his understandable concern for self-preservation. Were we to hold, as Murphy and Deslauriers urge, that any worker who should choose to utter a safety concern could only do so at the risk of assuming liability for any injury in the vicinity of the utterance, no matter how unrelated the injury should be to the content of the utterance, we would place a damper upon society's paramount interest in promoting a safe workplace. Absent some showing that Willbros assumed responsibility for the safe performance of the work at the job site, we decline to create a legal duty which could have no other impact than to abandon the public's concerted interest in creating safe working conditions either through self-help or through regulatory means. See, e.g., *In re Norwest Bank Fire Cases,* 410 N.W.2d 875, 879 (Minn.App.1987). No such showing has here been made and, accordingly, we find no basis to conclude that Willbros falls within the doctrine enunciated in *Kruchten v. United States,* supra, in *Walsh v. Pagra Air Taxi, Inc.,* supra, or in *Isler v. Burman,* 305 Minn. 288, 232 N.W.2d 818 (1975), or their progeny.[3]

Finding that Willbros had no legal duty to protect the Plaintiffs from harm that was occasioned by another, we grant Willbros's

---

**3.** Moreover, even if the comments of Willbros's inspector had imposed some responsibility for the responses that those comments had generat-

ed, we find no reasonable foreseeability, as a matter of law, that those comments related, in any way, to the injury that Satterlund sustained.

Motion for Summary Judgment since Willbros is entitled to the entry of Judgment as a matter of law.

NOW, THEREFORE, It is—

ORDERED:

1. That Willbros's Motion for Summary Judgment against the Plaintiffs [Docket No. 80] is GRANTED.

2. That Willbros's Motion for Summary Judgment against Murphy [Docket No. 83] is DENIED as moot.