**Thomas WALSH, Respondent,**

**v.**

**PAGRA AIR TAXI, INC., Appellant,**

**Roy L. Graham, Respondent,**

**City of Mankato, Defendant.**

**No. 48716.**

Supreme Court of Minnesota.

Aug. 10, 1979.

Farrish, Johnson, Maschka & Hottinger and Gerald L. Maschka, Mankato, for appellant.

Walbran, Walbran & Walbran and John P. Walbran, Owatonna, for Walsh, respondent.

Heard before ROGOSHESKE, SCOTT, and MAXWELL, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

Defendant Pagra Air Taxi, Inc. (Pagra) appeals from an order of the district court denying its motion for judgment notwithstanding the verdict or for a new trial in a negligence action arising out of Pagra's failure to extinguish a fire in plaintiff Thomas Walsh's airplane before it was reduced to salvage value. The chief issues raised are: (1) Did Pagra owe Walsh a duty to fight the fire in Walsh's airplane? (2) Was there a causal connection between any

negligence on the part of Pagra and the airplane damage? (3) Was Pagra prejudiced by the trial court's order that the city of Mankato (city) was causally negligent as a matter of law? We hold that Pagra owed Walsh a duty, that there was sufficient evidence of a causal connection between Pagra's negligence and the airplane damage, and that Pagra was not prejudiced by the trial court's order finding the city causally negligent. We therefore affirm.

On October 2, 1975, Pagra was the fixed base operator at the Mankato airport. A "fixed base operator" is a general aviation support service, found at most municipal airports in small- and moderate-sized communities, which sells airplane fuel, provides airplane repair, and operates a Unicom radio system. A Unicom system is available for the use of pilots of small aircraft in obtaining information about wind direction, weather, preferred runway, and other miscellaneous matters. Pagra, a private commercial business, functioned in its capacity as fixed base operator under a lease with the city. Under the terms of its operating agreement, Pagra was required to provide three employees trained and available to use firefighting equipment located at the airport, including a firetruck separately housed and maintained there by the city. The Mankato Municipal Airport Operations Manual also required the presence of three such firefighters at the airport, because Mankato was serviced by North Central Airlines, a certified air carrier.

On September 30, 1975, Roy Graham, the airport manager,[1] discovered that the door to the service building housing the firetruck at the airport had been damaged by city employees while removing a mower tractor from the garage. Graham immediately notified city officials, and they unsuccessfully attempted to repair the door on October 1.

On the morning of October 2, 1975, plaintiff Walsh traveled to South Dakota from Owatonna, Minnesota, in his Beechcraft Bonanza with a passenger, Larry Moening.

Walsh and Moening left Platte, South Dakota, for their return trip to Owatonna around 2:30 p. m. Near the Minnesota-South Dakota border, Walsh detected the odor of fuel in the cockpit and the gauges of the airplane began to indicate excessive fuel use. Walsh realized that fuel was leaking somewhere aboard the airplane and considered the possibility of fire. His principal concern, however, was not to land the aircraft but to get to a facility that could remedy the problem.

Walsh testified that near New Ulm, Minnesota, he radioed the Mankato airport on the Unicom, advised that his airplane had a serious fuel leak and he intended to land, and asked them if a mechanic was still on duty. Walsh testified that Pagra employees responded that they understood his message regarding the serious fuel leak and that the mechanics had just left. At that time or shortly thereafter, Walsh asked for wind speed, direction, and "favored runway" at Mankato and was provided the requested information. He did not request that Pagra have a firetruck waiting upon landing, and he did not declare any kind of emergency.

Despite the fuel leak, Walsh was able to land the airplane without incident. The engine quit upon landing, and both Walsh and his passenger got out of the airplane. Upon examining the airplane, Walsh saw a green stain indicating a leak of high octane aviation fuel. Pagra employees, noticing that the airplane had stopped, drove to it in the fuel truck to ask if there was any need of fuel. The Pagra personnel testified that they offered to tow the aircraft. Walsh testified that he was aware that Pagra had towing equipment, but he did not ask them for a tow and could not recall that they had offered one. There was testimony that in an airport not supervised by a control tower, the pilot is in command and dictates what action is to be taken with regard to the airplane.

1. Although Roy Graham's name appears as an officer of Pagra on its lease with the city, at the time of this incident, Roy Graham's relationship with Pagra had been terminated. The jury was instructed that Graham was the agent of the city.

Walsh decided to attempt to start the airplane to taxi it to the airport buildings. There was no testimony that he requested anyone to stand by with fire extinguishing equipment. Before attempting to start the airplane, he directed his passenger to ride with the Pagra personnel. Walsh testified that he recognized a risk of fire and that he did not want to subject his passenger to that risk. At the time he got back into the airplane and attempted to start it, he was aware that it had a fuel leak and that if the engine backfired during starting there was a possibility of igniting fuel vapors.

Walsh attempted to start the airplane at least three times. On all occasions except the last, the engine started, the plane traveled a short distance, and then the engine killed. On the last attempt to start the airplane, there was a "soft explosion" and the plane burst into flames. William Richards, one of the three Pagra employees who had come to inquire about the disabled airplane, went to get a fire extinguisher, and Bruce Carter, another Pagra employee, ran to get the firetruck out of the city's garage. Richards testified that he could not get close enough to the fire to use the hand fire extinguisher because of the heat. Carter, who ran 300 to 400 yards to the city garage, testified that when he turned around at the door of the garage the plane's cockpit was already engulfed in flames. The door to the garage could not be opened, and the Pagra employees, therefore, could not get the city's firetruck out of the garage. Carter then went to call the city's downtown fire station, which answered the call. Before the fire was extinguished, the aircraft was reduced to salvage value.

The jury returned a special verdict allocating 22 percent of the negligence to plaintiff Walsh, 42 percent to defendant Pagra, and 36 percent to the city, notwithstanding that it found that the negligence of the city was not a direct cause of the fire damage. After considering the various post-trial motions, the trial court changed the answer to the causation question with regard to the city from "no" to "yes," denied all other motions, and entered judgment for Walsh for $26,229. Following the taking of this

appeal, plaintiff Walsh settled with and released the city and Roy L. Graham by way of a so-called "Pierringer release."

Pagra's primary argument on appeal is that it owed no legal duty to Walsh and that the complaint, therefore, fails to state a cause of action. We do not agree. The city, while having no affirmative duty to assist in the preservation of private property, voluntarily undertook to render fire protection services to airport users. See, *Abresch v. Northwestern Bell Telephone Co.*, 246 Minn. 408, 75 N.W.2d 206 (1956). The assumption of that duty is evidenced by the city's supplying the airport with firefighting equipment and a firetruck, requiring the presence at the airport of personnel trained in firefighting, and providing equipment to contact the main fire station. The failure of the city to exercise reasonable care in performing this undertaking—that is, its failure to repair the door of the garage housing the firetruck—increased the risk of harm to Walsh's property. Clearly the city recognized that fire extinguishing equipment and personnel trained to use it are necessary parts of safe airport operation, and the record establishes that Walsh relied upon the airport fire protection service. Restatement, Torts 2d, § 323.

By the terms of its operating agreement with the city, Pagra agreed to undertake the fire-protection duty assumed by the city. The agreement included an obligation on the part of Pagra to provide "a minimum of three (3) employees trained in and available to use the fire fighting equipment located on the airport." Nothing in the record indicates that the city or Pagra maintained fire protection services solely for the benefit of North Central Airlines. The only reasonable reading of the agreement is that fire protection services, like the other specified primary commercial support services, were to extend to "all aircraft, operators and users of the Airport who desire to utilize any or all of the services offered by the operator * * *." We believe that the applicable rule of law is stated in Restatement, Torts 2d, § 324A:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

Pagra undertook to perform the city's duty, recognizing that the services to be performed were necessary to protect against damage or destruction by fire of an airplane landing at the airport. There is ample evidence that Pagra employees negligently discharged their duty by failing to extinguish the fire before the airplane was reduced to salvage value.

■ Pagra further contends that the Pagra firemen had no duty under the operations manual to actually become engaged in firefighting unless notified by the airport manager. The fact that the airport manager did not notify the Pagra firefighters to prepare for the possibility of the fire does not absolve Pagra of its duty. The airport manager was not present at the time of the fire, and the person filling his role was apparently a Pagra employee. Besides, Pagra was so intimately involved in the operations of the airport that it cannot escape responsibility when its employees, charged with the duties of manning the radio and fighting airport fires, neglected to take necessary steps to prepare for the possibility of extinguishing an aircraft fire.

■ Defendant Pagra also argues that, since no evidence was introduced showing the extent to which the fire damage would have been reduced had Pagra properly responded to the fire risk, the jury verdict was based purely on speculation and conjecture and must be overturned. Pagra's contention fails because sufficient evidence was admitted to justify the jury's apportionment of negligence. See, *Seidl v. Trollhaugen, Inc.*, 305 Minn. 506, 232 N.W.2d 236 (1975). The jury did not have to speculate that the damage to Walsh's aircraft would have been reduced had Pagra reasonably responded to the fire risk. Based on Walsh's radio message of a serious fuel leak and notification of intent to land at Mankato, it could have found that Pagra, knowing the firetruck at the airport was immobilized because of the broken garage door, should have immediately called the downtown fire station, which could have had equipment standing by when Walsh landed some 15 minutes later. The jury could also have found that Pagra should have had its fire extinguishers on hand beside the airplane while Walsh attempted to start it. The evidence thus permits an inference that early action by Pagra would have prevented extensive damage to the plane.

■ Defendant Pagra argues that it was prejudiced by the trial court's attempt to harmonize the special jury verdict. The jury found the city negligent, although not in a causal sense, but found that the city's negligence contributed 36 percent to the fire damage. The trial court amended the special verdict by changing the jury's answer to the question whether the city's negligence was a direct cause of plaintiff's injury from "no" to "yes." The favored method for resolving inconsistent jury answers is for the trial court to send the jury back for further deliberations. Other alternatives open to a trial court are to order a new trial, render judgment against the party having the burden of proof, or change the answer from "no" to "yes" if the trial court finds causal negligence as a matter of law. *Meinke v. Lewandowski*, 306 Minn. 406, 412, 237 N.W.2d 387, 391 (1975); *Orwick v. Belshan*, 304 Minn. 338, 231 N.W.2d 90 (1975). The trial court chose this latter latter alternative.

Whether the city was indeed causally negligent as a matter of law need not be decided because of the settlement entered into by the city and plaintiff Walsh. The city, which was subjected to liability be-

cause of the trial court's change in the special verdict, declined to appeal, but instead entered into a so-called "Pierringer release"[2] with plaintiff Walsh. The city's settlement with plaintiff Walsh renders the issue of the change of jury verdict moot, since Walsh agreed to limit his recovery against Pagra to the 42 percent in the special verdict. See, *Chart v. General Motors Corp.*, 80 Wis.2d 91, 258 N.W.2d 680 (1977).

It is difficult to see how Pagra could be prejudiced by these circumstances. Since we reject Pagra's contention that Walsh was more negligent than Pagra as a matter of law, the jury's determination that Pagra was 42 percent negligent while Walsh was only 22 percent negligent should be allowed to stand. We are not persuaded that, had the trial court accepted the finding that the city was not causally negligent and sent the jurors back to redetermine the comparative negligence of only Pagra and Walsh, they would have found Walsh 50 percent or more negligent. Only such a redetermination would permit defendant Pagra to prevail. We conclude that the jury determined Pagra to be more negligent than Walsh in its original allocation, and that allocation is supported by the evidence.

Pagra's other contentions are without merit. First, the lease and other documents introduced in evidence to prove Pagra's duty were clearly admissible. Second, while there can be no doubt that Walsh was negligent in starting his airplane once he had safely landed, such negligence does not automatically make him more negligent than Pagra where the jury found that Pagra's failure to reasonably fight the fire greatly aggravated the damage to the airplane. Finally, since primary assumption of the risk relates to whether defendant owed any duty to protect plaintiff, our holding that Pagra owed a duty disposes of Pagra's contention that Walsh had primarily assumed the risk. See, *Springrose v. Willmore*, 292 Minn. 23, 192 N.W.2d 826 (1971).

Affirmed.

2. We have recognized the validity of such releases. *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn.1978).

SHERAN, C. J., and TODD, J., took no part in the consideration or decision of this case.