Ouida Rosellen WILLIAMS, as Trustee for the heirs of Thomas Wayne Williams, Jimmy Don Williams and Sandra J. Williams, Appellant (CX–94–288), Respondent (CX–94–355),

v.

John HARRIS, et al., Defendants,

and

Shafer Contracting Co., Inc., Defendant and Third-Party Plaintiff, Respondent,

v.

WARNING LITES OF MINNESOTA, INC., Third-Party Defendant, Respondent.

Ginger Sue BISHOP, as Trustee for the heirs of Robert Joe Gillaspy, Plaintiff (CX–94–288), Appellant (CX–94–355),

v.

John HARRIS, et al., Defendants,

and

Shafer Contracting Co., Inc., Defendant and Third-Party Plaintiff, Respondent (CX–94–355),

v.

WARNING LITES OF MINNESOTA, INC., Third-Party Defendant, Respondent (CX–94–355).

Nos. CX–94–288, CX–94–355.

Court of Appeals of Minnesota.

July 5, 1994.

James C. Wicka, Jeffrey M. Ellis, Messerli & Kramer, Minneapolis, for Williams, etc., Appellant (CX–94–288), Respondent (CX–94–355).

John H. Hinderaker, James J. Hartnett, Faegre & Benson, Minneapolis, for Ginger Sue Bishop, etc., Plaintiff (CX–94–288), Appellant (CX–94–355).

John M. Kennedy, Jr., Mary P. Rowe, Jardine, Logan & O'Brien, St. Paul, for Shafer Contracting Co., Inc.

Kenneth W. Dodge, Mark Bloomquist, Meagher & Geer, Minneapolis, for Warning Lites of Minn., Inc.

Considered and decided by DAVIES, P.J., and LANSING and FORSBERG, JJ.

## OPINION

LANSING, Judge.

This appeal raises the issue of whether a road construction contractor and its subcontractor have a contractual or common law duty to motorists using a detour route designed and maintained by the State of Minnesota. We hold that neither the contract nor the common law imposes a duty on the contractor or the subcontractor to provide for the safety of a detour route that is a preexisting roadway outside the construction zone. Nor is a duty created by the subcontractor gratuitously inspecting the detour route to determine the effectiveness of traffic control devices when there is no reliance on the inspection.

## FACTS

The claims at issue arise from a fatal accident during the extensive reconstruction of Trunk Highway 55 in Dakota County. The Minnesota Department of Transportation (MN/DOT) established a detour to route traffic off Highway 55 and assumed jurisdiction over county roads within the detour route. As part of the plan, MN/DOT specified the precise location of each traffic control device within the detour route.

Under a contract between the state and Shafer Contracting Co., the state delegated to Shafer the "furnishing, installing, maintaining, and removing" of traffic control devices as shown in MN/DOT's traffic control plan. Shafer contracted with Warning Lites of Minnesota, Inc. to fulfill that part of the contract relating to traffic control devices.

The accident occurred at an intersection along the detour route, more than two miles from the construction zone. John Harris, driving a car in which Thomas W. Williams and Jimmy Don Williams, brothers, and Robert Joe Gillaspy were passengers, failed to stop at a stop sign at the intersection of County Roads 47 and 48, proceeded the wrong way down County Road 47, and collided head-on with another car driven by Bruce G. Lapean. The accident killed Thomas W. Williams and Robert Joe Gillaspy and seriously injured Jimmy Don Williams. Harris had driven through the intersection several times before the day of the accident.

County Roads 47 and 48 are preexisting roadways and the design of the intersection did not change when it became part of the detour route although it is undisputed that the Highway 55 detour caused an increase in traffic on County Road 48. Three markers (also preexisting) warned drivers on County Road 48 of the upcoming intersection with County Road 47: a stop sign, the words "STOP AHEAD" on the road itself, and a double yellow center line. Although the intersection had no new warning devices, Bruce Zeien, a Warning Lites driver, testified that he inspected the entire detour route to see that Warning Lites' traffic control devices were in place. He stated that he also checked for the overall effectiveness of the detour route and motorists' reactions.

The Williamses and Bishop brought this wrongful death and personal injury action against the State of Minnesota, Shafer, and Harris (the Williamses also sued Dakota County in their amended complaint). Shafer brought third-party claims against Warning Lites, and Warning Lites was later added as a direct defendant. The claimants essentially allege that the intersection was unreasonably dangerous due to negligent design and inadequate supervision of its safe operation. The district court entered summary judgment for Shafer and Warning Lites on these

claims, finding that their duty did not extend to inspecting or safely designing the detour route. The court, however, denied summary judgment on the additional claim that Warning Lites assumed a duty by voluntarily inspecting the detour route.

## ISSUES

I. Did Shafer and Warning Lites have a contractual or common law duty to provide for the safety of an intersection on a detour route outside the construction zone?

II. Did the district court err in denying summary judgment on the voluntary assumption-of-duty claim?

## ANALYSIS

### I

■ The claimants in this litigation allege that Shafer, as the construction contractor, had a contractual duty, and a common law duty that arises in part from the contract, to provide for the safety of an intersection that is part of a detour route. Shafer and Warning Lites argue that summary judgment was properly entered because the unambiguous contract neither imposes such a duty nor provides a basis on which a common law duty can be claimed.

■ Whether a contract is ambiguous is a legal rather than a factual question. *Lamb Plumbing & Heating v. Kraus–Anderson of Minneapolis,* 296 N.W.2d 859, 862 (Minn. 1980). A contract is ambiguous if its terms are susceptible of more than one meaning. *Id.* If the terms are unambiguous, the court must determine the parties' intent solely from its written content. *Metropolitan Sports Facilities Comm'n v. General Mills,* 470 N.W.2d 118, 123 (Minn.1991).

The contract, in a standard specification, states that the contractor shall provide for the safety of the general public. This standard specification is limited, however, by other contract terms. One such limitation is a provision distinguishing between the construction zone and the detour route and providing that the state has responsibility to "maintain those detour roads which are es-

tablished by the Commissioner" when the plan provides for closure to through traffic.

Another standard specification outlines MN/DOT's responsibilities to "design, provide, install, maintain, and remove all necessary traffic control devices to control and guide traffic over detours provided for in the Contract." This responsibility is consistent with a statutory reservation to the Commissioner of Transportation of exclusive authority for the placement and maintenance of traffic control devices on trunk highways. *See* Minn.Stat. § 169.06, subd. 2 (1992) (prohibiting placement or maintenance of traffic control devices on trunk highways unless permitted by the Commissioner). MN/DOT took jurisdiction over the county road when it established the detour route to take traffic off Trunk Highway 55.

The state delegated part of its authority to erect traffic control devices to Shafer, but specifically retained authority for the design of the detour route and specified the precise location of each traffic control device within the detour route. In a special provision, which the contract identifies as controlling over a standard specification, the contract delegates the "furnishing, installing, maintaining, and removing the traffic control devices * * * as shown in the Traffic Control sheets of the Plans." Shafer contracted with Warning Lites to fulfill these duties. This limited delegation of authority does not contractually reallocate the state's authority and responsibility for the design of the detour route and the location of the traffic control devices.

■ Because the contract provisions retain the state's authority to design the route, Shafer has no contractual duty to provide for the inspection and safe design of the detour route. And because the provisions retaining the authority are unambiguous, the evidence offered by the Williamses and Bishop to show how the contract was performed is extrinsic and irrelevant. *See Instrumentation Servs., Inc. v. General Resource Corp.,* 283 N.W.2d 902, 908 (Minn.1979). This analysis applies equally to Warning Lites, Shafer's subcontractor for the traffic control device portion of the contract.

The Williamses and Bishop also argue that the contractors had a common law duty based on the existence of the contract to provide for the safety of the detour route. Whether a person owes a legal duty to another person is a question of law. *Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 924 (1986). A contractor's duty of care may be broader than that set forth in the contract. *See Dornack v. Barton Constr.*, 272 Minn. 307, 317, 137 N.W.2d 536, 544 (1965) (standard of care owed by construction company to traveling public is not fixed solely by terms of contract).

Minnesota case law imposes a mutual duty on contractors and the state to provide for the safety of motorists within a construction zone. *See Cummins v. Rachner*, 257 N.W.2d 808, 813 (Minn.1977); *Ferguson v. Benson*, 309 Minn. 160, 165–66, 244 N.W.2d 116, 119 (1976); *Smith v. Lafortune*, 288 Minn. 135, 141–42, 179 N.W.2d 136, 139–40 (1970); *Dornack*, 272 Minn. at 319, 137 N.W.2d at 545. This mutual duty has not been extended beyond the construction zone, and we decline to extend it in this case. The accident occurred at a preexisting intersection on a state-designed detour route more than two miles from the construction zone. Shafer and Warning Lites did not change the design of the detour route in any way, and Shafer and Warning Lites did not perform any construction work on the detour route itself. There is no allegation that any affirmative act by Shafer and Warning Lites created the condition that caused the accident. Warning Lites merely provided signs, as specified by the state's plans. Summary judgment is proper on both the common law and contractual claims.

## II

Warning Lites filed a notice of review challenging the district court's denial of summary judgment on the claim that Warning Lites voluntarily assumed a duty to inspect the detour route through the conduct of its employee, Bruce Zeien. We reject the Williamses and Bishop's argument that this ruling is beyond the reach of our review. *See* Minn.R.Civ.App.P. 106 (notice of review may be filed on order adversely affecting the respondent, entered in the same action); *see also Peterson v. Brown*, 457 N.W.2d 745, 748 (Minn.App.) (despite its general nonappealability, the denial of a summary judgment may be reviewed under Minn.R.Civ.App.P. 103.04 in concert with an appealable judgment), *pet. for rev. denied* (Minn. Aug. 23, 1990).

Minnesota recognizes that, even though there is no duty in the first instance, if a person voluntarily assumes a duty, the duty must be performed with reasonable care or the person will be liable for damages. *Isler v. Burman*, 305 Minn. 288, 295, 232 N.W.2d 818, 822 (1975). Liability for voluntarily assuming a duty arises only if this conduct "leads others to rely on such assumption of duty and to refrain from taking other and more direct action to protect themselves * * *." *Abresch v. Northwestern Bell Tel. Co.*, 246 Minn. 408, 416, 75 N.W.2d 206, 211–12 (1956); *see also Isler*, 305 Minn. at 292, 232 N.W.2d at 821–22 (court instructed jury on voluntary assumption of duty when evidence showed that party who inspected premises had assured others of premises' safety).

Zeien testified that, in performing inspections, he checked the overall effectiveness of traffic control devices, whether they were supplied by Warning Lites or not. Zeien further testified that, if he had noticed problems with any traffic control devices or observed drivers having difficulty with the route, he would have notified his supervisors. Zeien testified that his concern for public safety was part of his job.

There is no evidence that any motorist relied on Zeien's inspections. Although motorists implicitly rely on signs for safe passage through a detour, that reliance would not attach to Zeien's silent inspection, but rather to the state's design of the detour route and its decisions on placement of specific traffic control devices. A MN/DOT official testified that although MN/DOT would welcome information from a contractor about the safety of a detour route, MN/DOT does not rely on contractors for this information. The official further testified that he recalled no reports from contractors about the safety

of intersections on the Highway 55 detour route.

 The Williamses and Bishop have failed to show that motorists or the state relied on Zeien's conduct, and we conclude that summary judgment is proper on the assumption-of-duty issue. *See* Minn.R.Civ.P. 56.03; *Hunt v. IBM Mid Am. Employees Fed. Credit Union,* 384 N.W.2d 853, 855 (Minn.1986). Warning Lites offers another basis for summary judgment that turns on the distinction between "public duty" and "special duty." *See Cracraft v. City of St. Louis Park,* 279 N.W.2d 801, 806 (Minn.1979) (distinguishing public duty from special duty and limiting actions against city to special duty). Although this argument may have merit, we do not address it because it is unnecessary in light of our decision that the absence of reliance requires summary judgment and because this alternate theory was not argued in the district court. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (limiting review to issues raised in the district court).

### DECISION

We affirm the district court's entry of summary judgment holding that Shafer and Warning Lites did not have a contractual or common law duty for the design safety of the intersection. We reverse the district court's denial of summary judgment on the issue of voluntary assumption of duty.