**IRONWOOD SPRINGS CHRISTIAN RANCH, INC., Appellant,**

v.

**WALK TO EMMAUS a/k/a Walk for Emmaus, Respondent.**

No. A10–1907.

Court of Appeals of Minnesota.

June 27, 2011.

Peter C. Sandberg, Sandberg & Sandberg LLC, Rochester, MN, for appellant.

Stephen O. Plunkett, Matthew J. Mahoney, Bassford Remele, Minneapolis, MN, for respondent.

Considered and decided by SCHELLHAS, Presiding Judge; HUDSON, Judge; and WORKE, Judge.

## OPINION

SCHELLHAS, Judge.

Appellant commenced this action against respondent for contribution to personal-injury damages awarded to a retreat participant in a separate slip-and-fall case. Appellant challenges summary judgment in favor of respondent, arguing that (1) as a possessor of the land, respondent owed the retreat participant a legal duty to keep the premises safe, and (2) respondent assumed a duty of care when it undertook appellant-landowner's duty to salt and chop the ice in the location of the retreat participant's fall. We affirm in part, reverse in part, and remand for trial. We also grant respondent's motion to strike materials excluded by the district court.

## FACTS

Appellant Ironwood Springs Christian Ranch, Inc. is a nonprofit organization that owns and operates a retreat facility. In January 2005, respondent Walk to Emmaus rented part of Ironwood's facility for a women's retreat. During the retreat, Ironwood's staff members remained on the facility premises and performed ongoing general maintenance.

Josh Christenson served as the Ironwood host. Jim Rottinger was the Emmaus employee in charge of the retreat. On Friday, January 28, Rottinger informed Christenson that ice was located outside the main door to the dining hall. The ice resulted from snow melting on the roof and dripping onto the ground in front of the door. This area was heavily trav-

elled by Emmaus personnel and retreat participants.

According to Rottinger, Christenson indicated that Rottinger should take care of the ice himself. This surprised Rottinger because in the past Ironwood staff had taken care of any problems, and he expected that Ironwood would take care of the ice. According to Christenson, he told Rottinger that he "would be happy to take care of [the ice]," but Rottinger told him that "there was no need to" because Emmaus personnel would "be glad to do it." Christenson showed Rottinger the location of the salt and ice chisel, and Rottinger salted and chopped the ice four or five times over the weekend and testified that he did not see anyone from Ironwood treat the ice over the weekend. Christenson maintains that, in reliance on Rottinger's statement that Emmaus personnel would take care of the ice, he neither treated the ice nor asked any Ironwood weekend staff to treat the ice. But an Ironwood employee recalls seeing another Ironwood employee salting and "chipping away at the ice" outside the main door to the dining hall.

On Sunday, January 30, Jacky Larkin, a retreat participant, slipped on the ice, fell, hit her head, and sustained serious injuries. Larkin sued Ironwood, and a jury awarded her damages of $705,000, apportioning 42% fault to her and 58% to Ironwood. Ironwood appealed and this court affirmed. *Larkin v. Ironwood Springs Christian Ranch, Inc.,* No. A08–0645, 2009 WL 234620, at *1 (Minn.App. Feb. 3, 2009).

After Ironwood commenced this contribution action against Emmaus, Emmaus moved for summary judgment, arguing that it did not owe Larkin a duty of care because (1) Ironwood remained in control of the premises, and (2) Emmaus did not voluntarily assume Ironwood's duty of care

when Rottinger salted and chopped the ice. The district court agreed and granted summary judgment to Emmaus.

This appeal follows.

## ISSUES

I.  Did the district court err by concluding as a matter of law that Emmaus was not a possessor of the land?

II.  Did the district court err by concluding as a matter of law that Emmaus owed no duty of care to Larkin because Emmaus did not assume Ironwood's duty and neither Ironwood nor Larkin relied on any assumption by Emmaus of Ironwood's duty to Larkin to maintain its premises in a safe condition?

## ANALYSIS

### I.  Motion to Strike

■ We first address Emmaus's motion to strike from Ironwood's appendix an affidavit by Ironwood employee Daniel Ostergard, who worked the weekend that Larkin fell, and supporting documents. The district court file contains the Ostergard affidavit and supporting documents. But the district court denied Ironwood's motion to submit the affidavit because it was untimely, and the court did not consider the affidavit. Ironwood does not challenge the district court's denial of its motion to submit the affidavit. Ironwood instead opposes Emmaus's motion to strike, arguing that the question of whether the Ostergard affidavit should be considered can be more fully addressed in the briefs and oral arguments. We disagree.

Because Ironwood has waived its right to challenge the district court's denial of the motion to submit the Ostergard affidavit, we grant the motion to strike. *See Balder v. Haley,* 399 N.W.2d 77, 80 (Minn. 1987) (stating that "issues not argued in

briefs must be deemed waived on appeal") (quotation omitted); *Brodsky v. Brodsky*, 733 N.W.2d 471, 479–80 (Minn.App.2007) (granting respondent's motion to strike materials from appellant's appendix that were stricken by district court because appellant waived his right to challenge issue by failing to address it in his brief).

## II. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from summary judgment, an appellate court reviews de novo whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 77 (Minn.2002). The appellate court views the evidence in the light most favorable to the one against whom summary judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

To establish a prima facie case of negligence, a plaintiff must show that a duty was owed, breach of that duty, causation, and damages. *Foss v. Kincade*, 766 N.W.2d 317, 320 (Minn.2009). Summary judgment is appropriate when the record lacks proof of "any of the four elements of a prima facie case [of negligence]." *Id.* "Whether a person has a duty of care is an issue for the court to determine as a matter of law." *State v. Back*, 775 N.W.2d 866, 869 (Minn.2009) (quotation omitted).

## III. Contribution for Negligence

▆ Ironwood argues that Emmaus is jointly liable to Larkin for damages. "The very essence of the action of contribution is common liability." *Engvall v. Soo Line R.R. Co.*, 632 N.W.2d 560, 568 (Minn.2001) (quotation omitted). "The doctrine of contribution is an equitable doctrine which requires that persons under a common burden share that burden equitably." *Spitzack v. Schumacher*, 308 Minn. 143, 145, 241 N.W.2d 641, 643 (1976). "One who has paid more than his share is entitled to contribution from the other to reimburse him for the excess so paid." *Id.* (quotation omitted). The doctrine of contribution applies when "several persons are under a [c]ommon liability to [another and] equity ... distribute[s] the burden among the obligors in proportion to their respective shares." *American Auto. Ins. Co. v. Molling*, 239 Minn. 74, 77, 57 N.W.2d 847, 850 (1953) (quotation omitted). When one obligor satisfies the obligation that would otherwise fall on all of the obligors, the remaining obligors are required to contribute "to the extent [that the one] discharged the obligation in excess of what could justly be claimed from him." *Id.* (quotation omitted). But "Minnesota's time-honored common law of contribution does not justify contribution from parties who are not liable to the injured party." *Engvall*, 632 N.W.2d at 568 (quotation omitted).

## IV. Duties of a Land Possessor

The district court rejected Ironwood's argument that Emmaus, as a possessor of land, owed the same duty to Larkin, as did Ironwood, to keep the premises in safe condition. We also reject Ironwood's argument.

▆ "Landowners have a duty to use reasonable care for the safety of all ... persons invited upon the premises." *Sutherland v. Barton*, 570 N.W.2d 1, 7 (Minn. 1997) (quotation omitted). "It is generally recognized that one who carries on activities on land on behalf of the possessor is

subject to the same liabilities as the possessor, and that one in control of the premises is under the same duty as the owner to keep the premises in safe condition." *Dishington v. A.W. Kuettel & Sons, Inc.*, 255 Minn. 325, 330, 96 N.W.2d 684, 688 (1959) (footnotes omitted). Section 328E of the Restatement (Second) of Torts (1965) defines a "possessor" of land as:

> (a) a person who is in occupation of the land with intent to control it or (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

The Minnesota Supreme Court has used "the factual approach recommended by the Restatement to determine the meaning of the word 'possessor.'" *Isler v. Burman*, 305 Minn. 288, 295, 232 N.W.2d 818, 821 (1975).

In *Isler*, the Minnesota Supreme Court imposed duties of a land possessor on a church that sponsored and organized a snowmobile event on a farmer's land. *Id.* Noting that the church planned the event, "received permission from the owner to use the farmland," assumed the duty of inspecting the land for hazards, "invited the people who brought snowmobiles," and "assured those involved that the party would be supervised and chaperoned by the church," the supreme court held that "the church was a possessor of the land for the purposes of the snowmobile party." *Id.* at 294–95, 232 N.W.2d at 821.

■ But Emmaus, unlike the church in *Isler*, did not occupy the land with intent to control it; Ironwood remained in control. Although Rottinger salted and chopped the ice four or five times during the weekend, Ironwood's staff members remained on the premises throughout the weekend and performed ongoing general maintenance. Under its contract with Ironwood for the use of the facility, Emmaus was not obligated to perform any maintenance or to sand, salt, or clear ice from the premises; Ironwood was responsible for providing safe walkways. Although Emmaus rented part of Ironwood's land for its retreat, Emmaus did not occupy the land with intent to control it.

The district court did not err by concluding that Emmaus was not a possessor of land owing the same duty of care as Ironwood, the owner.

## V. Assumption of a Duty of Care

■ Minnesota has long recognized that "one who voluntarily assumes a duty must exercise reasonable care or he will be responsible for damages resulting from his failure to do so." *Id.* at 295, 232 N.W.2d at 822; *see also Williams v. Harris*, 518 N.W.2d 864, 868 (Minn.App.1994), *review denied* (Minn. Sept. 28, 1994) ("Minnesota recognizes that, even though there is no duty in the first instance, if a person voluntarily assumes a duty, the duty must be performed with reasonable care or the person will be liable for damages.").

In *Williams*, this court relied on *Abresch v. Northwestern Bell Tel. Co.*, a 1956 supreme court case, and stated that "[l]iability for voluntarily assuming a duty arises only if this conduct 'leads others to rely on such assumption of duty and to refrain from taking other and more direct action to protect themselves.'" 518 N.W.2d at 868 (quoting *Abresch v. Northwestern Bell Tel. Co.*, 246 Minn. 408, 416, 75 N.W.2d 206, 211–12 (1956)). In *Abresch*, the supreme court relied on the Restatement (First) of Torts § 325 (1934). 246 Minn. at 414, 75 N.W.2d at 210–11. The Restatement (First) of Torts § 325 provides, as follows:

One who gratuitously undertakes with another to do an act or to render services which he should recognize as necessary to the other's bodily safety and thereby leads the other in reasonable reliance upon the performance of such undertaking

(a) to refrain from himself taking the necessary steps to secure his safety or from securing the then available protective action by third persons, or

(b) to enter upon a course of conduct which is dangerous unless the undertaking is carried out, is subject to liability to the other for bodily harm resulting from the actor's failure to exercise reasonable care to carry out his undertaking.

In this case, the district court did not cite to the Restatement of Torts in its discussion of whether Rottinger assumed a duty of care. The district court seemed to rely on *Williams* when it concluded that "[t]here is no evidence that others, including Larkin, relied on any assumption of duty by Rottinger or that Larkin, the other retreat attendees, or the Ironwood staff refrained from taking other and more direct actions to protect themselves." Citing *Williams,* both parties limit their arguments to whether any disputed material facts exist regarding reliance upon Rottinger's alleged assumption of Ironwood's duty to maintain the retreat premises in a safe condition, i.e., salting and chopping the ice. As we previously noted, the analysis in *Williams* is based on *Abresch.*

But since its decision in *Abresch,* the supreme court has adopted the Restatement (Second) of Torts § 324A and has applied all three bases of liability contained in section 324A when addressing liability to a third party after an assumption of a duty. *See Walsh v. Pagra Air Taxi, Inc.,* 282 N.W.2d 567, 570–71 (Minn. 1979) (adopting Restatement (Second) of Torts § 324A); *Erickson v. Curtis Inv. Co.,* 447 N.W.2d 165, 170–71 (Minn.1989) (noting all three bases for imposing liability under Restatement (Second) of Torts § 324A); *see also Bjerke v. Johnson,* 742 N.W.2d 660, 674 (Minn.2007) (Hanson, J., concurring) (noting all three bases for imposing liability under Restatement (Second) of Torts § 324A); *Id.* at 678–81 (Anderson, G. Barry, J., dissenting) (analyzing section 324A(a), (b), and (c)).

■■■ The Restatement (Second) of Torts § 324A (1965) provides, as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to [perform] [1] his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Whether a duty has been assumed [2] is a question of fact. *Abresch,* 246 Minn. at 416, 75 N.W.2d at 212.

---

**1.** "The reporter for this edition of the Restatement ... has verified that the word 'protect' which appears at this point is a typographical error and should read 'perform.'" *Hill v. U.S. Fid. & Guar. Co.,* 428 F.2d 112, 115 n. 5 (5th Cir.1970); *see also Smith v. Allendale* *Mut. Ins. Co.,* 410 Mich. 685, 303 N.W.2d 702, 706 n. 4 (1981) (citing *Hill* ); *Miller v. Bristol–Myers Co.,* 168 Wis.2d 863, 485 N.W.2d 31, 38 n. 7 (1992) (citing *Hill* ).

**2.** Minnesota courts use the terms undertake, undertaking, undertook, assume, and assump-

Emmaus argues that section 323 of the Restatement (Second) of Torts applies to this case, not section 324A. Section 323 of the Restatement (Second) of Torts (1965) provides, as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Section 323 addresses the liability of one who undertakes to render services to another for harm to the other (not to a third party) resulting from his or her failure to exercise reasonable care. *See Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 674 (Minn.2001) (quoting section 323 and determining that no duty existed because landlord providing security measures did not constitute a service necessary for the protection of tenant's person or things). We reject Emmaus's argument that section 323 applies to this case.

The Minnesota Supreme Court addressed both sections 323 and 324A in *Pagra*, 282 N.W.2d at 570. The court noted that "[t]he city, while having no affirmative duty to assist in the preservation of private property, voluntarily undertook to render fire-protection services to airport users," while Pagra, an aviation-support services company, "[b]y the terms of its operating agreement with the city, ... agreed to undertake the fire-protection duty assumed by the city." *Id.* at 569–70. The court concluded that section

323 applied to the city's undertaking of fire-protection services to airport users, that section 324A applied to Pagra's undertaking of the city's duty, and that "[t]here [was] ample evidence that Pagra employees negligently discharged their duty by failing to extinguish the fire before the airplane was reduced to salvage value." *Id.* at 570–71.

█ In this case, Ironwood owed a duty of care to Larkin, and Emmaus allegedly assumed Ironwood's duty. We conclude that whether Emmaus, like Pagra, assumed Ironwood's duty to Larkin is governed by section 324A. We also conclude that genuine issues of material fact exist regarding whether Emmaus assumed Ironwood's duty. Although the parties do not dispute that Rottinger informed Christenson of the existence of ice on the premises, the parties dispute whether Emmaus assumed Ironwood's duty to attend to the ice and whether Ironwood personnel attended to the ice during the retreat weekend. Because of the disputed material facts, "[w]hether there was such assumption of responsibility and whether [Emmaus] failed to exercise reasonable care in the performance thereof involve[ ] questions of fact which cannot be determined on a motion for summary judgment." *Abresch*, 246 Minn. at 416, 75 N.W.2d at 212.

And causation is "generally a question of fact left to the finder of fact." *Paidar v. Hughes*, 615 N.W.2d 276, 281 (Minn.2000). Whether any breach by Emmaus of the duty it allegedly assumed caused Larkin physical harm is a material question of fact for a jury.

## VI. Liability Under Restatement (Second) of Torts § 324A

Under section 324A, Emmaus is liable only if (a) its failure to exercise reasonable

tion interchangeably in this context. *See, e.g.,*        *Pagra*, 282 N.W.2d at 570.

care increased the risk of harm, (b) it undertook a duty owed to Larkin by Ironwood, or (c) the harm to Larkin was suffered because either Larkin or Ironwood relied on Emmaus's performance of the undertaking. Reliance by Ironwood or Larkin is necessary for a determination of liability under section 324A(c), but not under sections 324A(a) or (b). We discuss Ironwood's claim for contribution under section 324A (a), (b), and (c).

## A. Section 324A(a)

In *Bjerke,* based on the existence of a special relationship under section 314A of the Restatement (Second) of Torts, the supreme court concluded that a homeowner had a duty to protect a child invitee from sexual abuse by another adult resident in the home. 742 N.W.2d at 662–63, 665–67. The supreme court therefore did not address whether a duty to protect existed under section 324A of the Restatement (Second) of Torts. *Id.* at 667. But three dissenting justices rejected the existence of a special relationship under section 314A and therefore determined it necessary to address whether a special relationship existed under section 324A. *Id.* at 676–77, 681 (Anderson, G. Barry, J., dissenting, joined by Page, J. and Gildea, J.).

In interpreting section 324A(a), the dissent relied on *Cracraft v. City of St. Louis Park,* 279 N.W.2d 801, 806–07 (Minn.1979), and *Andrade v. Ellefson,* 391 N.W.2d 836, 843 (Minn.1986). *Id.* at 678–79. In *Cracraft,* citing section 324A(a), the supreme court stated that "the municipality must use due care to avoid increasing the risk of harm." 279 N.W.2d at 807. Again citing section 324A(a), in *Andrade,* the supreme court explained that if an alleged existing danger had been discovered, it may have prevented harm, "but that is a failure to

decrease, not increase the risk of harm." 391 N.W.2d at 843.

Based on *Cracraft* and *Andrade,* the dissent concluded:

> Even assuming that Johnson actually undertook to protect Bjerke from third parties at Island Farm, Johnson's inaction did nothing to increase the risk of harm to Bjerke over what it would have been had Johnson not engaged in that undertaking. Johnson's intervention might have *prevented* Bjerke from suffering harm, but, as we stated in *Andrade,* "this is a failure to decrease, not increase the risk of harm." 391 N.W.2d at 843.

*Bjerke,* 742 N.W.2d at 679 (Anderson, G. Barry, J., dissenting).

But, here, if Ironwood relied upon Rottinger's assumption of its duty, by not instructing its own employees to salt or chop the ice, Emmaus may have increased the risk of harm to Larkin. Emmaus claims that Ironwood's employee chopped ice during the retreat weekend and that Ironwood therefore did not rely on Emmaus's assumption of duty, but Rottinger did not see anyone from Ironwood chopping. We conclude that genuine issues of material fact exist with respect to Emmaus's alleged liability under section 324A(a).

## B. Section 324A(b)

In *Pagra,* the supreme court concluded that the city "voluntarily undertook to render fire-protection services to airport users" under section 323 by "supplying the airport with firefighting equipment and a firetruck, requiring the presence at the airport of personnel trained in firefighting, and providing equipment to contact the main fire station." 282 N.W.2d at 570. The supreme court also concluded that a general aviation support services company operating at the airport agreed, "[b]y the

terms of its operating agreement with the city, ... to undertake the fire-protection duty assumed by the city" under section 324A. *Id.* at 569–71.

In *Erickson,* the supreme court concluded that a security firm, which a parking-ramp owner. hired to patrol the ramp, voluntarily undertook to perform the ramp lessee's duty to protect its customers under section 324A(b). 447 N.W.2d at 166, 170–71. The security firm therefore owed a duty of care to an assault victim who was a customer of the lessee. *Id.* at 170–71.

In *Bjerke,* the dissent stated that:

The comment and illustrations accompanying section 324A(b) suggest that a special relationship existed between Johnson and Bjerke under that provision only if, in addition to undertaking to protect Bjerke from third parties at Island Farm, Johnson also intended to *completely assume* this duty of protection that otherwise rested with Bjerke's parents.

742 N.W.2d at 680 (Anderson, G. Barry, J., dissenting). The dissent also noted that "[o]ther courts have recognized that a special relationship exists under section 324A(b) only when a duty is assumed in its entirety." *Id.* (citing cases); *but see Miller v. Bristol–Myers Co.,* 168 Wis.2d 863, 485 N.W.2d 31, 39 (1992) (declining to adopt the complete-assumption standard and stating that "[a] parent corporation that assumes a duty to its subsidiary's employees should be held to a standard of reasonable care even if its actions were only supplemental to the subsidiary's practices").

■ We agree with the dissent in *Bjerke* and conclude that to impose liability under section 324A(b), one who undertakes a duty owed by another to a third person must completely assume the duty. In this case, Ironwood had "a duty to use reasonable care for the safety of all ...

persons invited upon the premises." *Sutherland,* 570 N.W.2d at 7 (quotation omitted). Emmaus's alleged assumption of duty involves only one aspect of Ironwood's duty to its invitees—its duty to address the ice at the location where Larkin fell. *See Bjerke,* 742 N.W.2d at 677 (Anderson, G. Barry, J., dissenting) (noting that "[t]he extent of the duty owed under section 324A is defined by the extent of the undertaking"). Based on the disputed conversation between Rottinger and Christenson, we conclude that genuine issues of material fact exist about the Emmaus's assumption of duty, if any, the *scope of its assumption of duty, and whether it breached that duty, if assumed.* Because of disputed material facts, summary judgment is not appropriate.

## C. Section 324A(c)

Christenson testified that he did not treat the ice or tell the weekend staff to treat the ice because Rottinger told him Emmaus would "take care of it." Christenson's testimony suggests possible reliance by Ironwood on Emmaus's alleged assumption of duty. Whether anyone from Ironwood attended to the ice over the weekend is disputed. Therefore, a genuine issue of material fact exists regarding Ironwood's reliance on Emmaus's alleged assumption of duty, and summary judgment is not appropriate.

## DECISION

Because Emmaus did not occupy the land with intent to control it, the district court did not err by concluding that Emmaus was not a possessor of land under Restatement (Second) of Torts § 328E and therefore did not owe the same duty of care as Ironwood to Larkin. We therefore affirm in part. But because genuine issues of material fact exist regarding whether Emmaus assumed Ironwood's duty of care

to Larkin under sections 324A(a), (b), or (c), we reverse summary judgment to Emmaus and remand for further proceedings consistent with this decision.

**Affirmed in part, reversed in part, and remanded; motion granted.**