*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2117**

John Osmanski, et al.,
Appellants,

vs.

James and Jean Way d/b/a J & J Real Estate Properties, et al.,
Defendants,

Shakopee Distribution Services, LLC, d/b/a the Chanhassen Depot,
Respondent,

Star Tribune Media Company,
Respondent.

**Filed July 27, 2015
Affirmed
Willis, Judge***

Carver County District Court
File No. 10-CV-13-1308

David S. Rochlin, Rochlin Law Firm, Ltd., Edina, Minnesota (for appellants)

William J. McNulty, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota (for respondent Shakopee Distribution Services, LLC)

Scott P. Drawe, Drawe & Maland, Edina, Minnesota (for respondent Star Tribune Media Company)

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Considered and decided by Halbrooks, Presiding Judge; Reilly, Judge; and Willis, Judge.

## UNPUBLISHED OPINION

**WILLIS**, Judge

Appellants challenge the dismissal on summary judgment of their negligence claims against respondents, who leased and operated a newspaper-distribution center on property where one of the appellants was injured when he slipped on ice in the parking lot. Appellants assert that the district court erred by concluding that respondents did not owe or assume a duty as a matter of law. We affirm.

## FACTS

Appellant John Osmanski delivered Star Tribune newspapers. On December 13, 2010, at about 2:00 a.m., Osmanski drove to the warehouse in Chaska where he always picked up his newspapers and parked in the warehouse parking lot. As he walked toward a ramp connected to the building, he slipped on ice in the parking lot and fell, seriously injuring his right leg.

The warehouse and parking lot were part of an office complex owned by James and Jean Way d/b/a J & J Real Estate Properties. Respondent Star Tribune Media Company LLC d/b/a the Star Tribune Company leased office and warehouse space from J & J. The Star Tribune used the warehouse as a distribution center for the delivery of its newspapers. The Star Tribune contracted with two newspaper distributors to distribute newspapers from this location: respondent Shakopee Distribution Services, LLC d/b/a the Chanhassen Depot and Ron Borg d/b/a Chaska Home Delivery Service a/k/a the Chaska

Depot. At the time of his injury, Osmanski was an independent contractor of Chanhassen Depot.

On December 13, 2013, Osmanski and his wife sued J & J, the Star Tribune, Chanhassen Depot, and Chaska Depot (collectively, the defendants) for damages arising from their alleged negligence. Specifically, the Osmanskis alleged that: (1) the defendants were negligent by failing to inspect and maintain the premises, by failing to provide adequate lighting, and by failing to remove ice and snow from the parking lot and (2) the defendants knew or should have known of the dangerous conditions existing on the property and were negligent by failing to warn of the dangerous conditions.

Upon completion of discovery, the defendants moved for summary judgment. A hearing was held in June 2014, and the district court issued an order in August 2014, denying J & J's motion but granting the motions of the Star Tribune, Chanhassen Depot, and Chaska Depot. The Osmanskis subsequently settled their claims against J & J. The Osmanskis now appeal the summary-judgment dismissal of their claims against the Star Tribune and Chanhassen Depot but do not appeal the dismissal of their claims against Chaska Depot.

## D E C I S I O N

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, establishes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Citizens State Bank Norwood Young Am. v. Brown*, 849 N.W.2d 55, 61 (Minn. 2014); *see also* Minn. R. Civ. P. 56.03. "Reviewing the district court's grant of summary judgment de novo, we view

3

the evidence in the light most favorable to the party against whom summary judgment was granted." *Finn v. Alliance Bank*, 860 N.W.2d 638, 655 (Minn. 2015) (quotation omitted).

"Negligence is the failure to exercise the level of care that a person of ordinary prudence would exercise under the same or similar circumstances." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014). "To recover on a claim of negligence, a plaintiff must prove: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) that the breach of the duty was a proximate cause of the injury." *Id.* Summary judgment is appropriate when the record contains "a complete lack of proof on any of the four essential elements of the negligence claim." *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn. 2001).

## I. The Star Tribune was not a possessor of the land in question and therefore did not owe Osmanski a duty to keep the premises in a safe condition.

The Osmanskis argue that the Star Tribune owed John Osmanski a duty to keep the parking lot in a safe condition. The existence of a duty of care is a question of law, which we review de novo. *Doe 169*, 845 N.W.2d at 177. "Landowners have a duty to use reasonable care for the safety of all . . . persons invited upon the premises." *Ironwood Springs Christian Ranch, Inc. v. Walk to Emmaus*, 801 N.W.2d 193, 197 (Minn. App. 2011) (quotation omitted). A possessor of land has the same duty as a landowner to keep the premises in a safe condition. *Id.* at 198. A possessor of land is defined as

> (a) a person who is in occupation of the land with
> intent to control it or (b) a person who has been in occupation

4

> of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

*Id.* (quoting Restatement (Second) of Torts § 328E (1965)).

The district court denied J & J's motion for summary judgment because it concluded that, as the landowner, J & J owed Osmanski a duty to provide and maintain safe access to and from the building. The district court granted the Star Tribune's motion for summary judgment because it determined that "the Star Tribune did not retain the necessary control as a matter of law to warrant the imposition of direct liability for [Osmanski's] injuries." The Star Tribune owed Osmanski a duty only if it was a possessor of the land in question. *See id.* To make this determination, we look to the respective rights and obligations of J & J and the Star Tribune as set forth in their lease.

In July 2009, J & J leased office and warehouse space to the Star Tribune, and the lease was in effect at the time of the accident. Paragraph 4 of the lease addressed the parties' rights and responsibilities regarding the parking lot:

> [The Star Tribune], its employees, and invitees shall have the non-exclusive right to use the common driveways, and parking lots along with the other tenants and customers of the building. . . . All parking areas will be lighted during hours of darkness. If any condition known to [J & J] arises which presents a foreseeable danger to [the Star Tribune's] employees or invitees, [J & J] will immediately notify [the Star Tribune] of such condition and will correct the condition.

Paragraph 12 addressed the parties' obligations to maintain the appearance of and access to all common areas:

5

> [J & J] and [the Star Tribune] mutually agree to keep the grounds, building, leased premises and common areas in a condition of good repair and appearance as their respective responsibilities and rights may allow. [J & J] shall provide general access to [the Star Tribune] and its invitees to the common areas except as reasonable security requirements and temporary conditions may prevent, and shall make a reasonable effort to keep the common areas well maintained and free of nuisance. [J & J] may establish and [the Star Tribune] will abide by reasonable rules for parking, security, handling of trash and like procedures.

Paragraph 11 provided that the Star Tribune was "wholly responsible for the maintenance and repair of the interior of the leased premises." Paragraph 11 further provided: "[The Star Tribune] is responsible for snow removal two feet out from doors and entries to the leased premises. [The Star Tribune] shall also have the right, but not the obligation, to clear snow from all or any portion of the parking areas." The parties agree that Osmanski was not injured within two feet of any door or entry of the leased premises.

To be a possessor of land, a person or entity must be "in occupation of the land" and must have "intent to control it." *Id.* (quotation omitted). The district court correctly concluded that the Star Tribune did not have the intent to control the parking lot because J & J remained in control. Under the lease, both J & J and the Star Tribune "mutually agree[d] to keep the grounds . . . and common areas in a condition of good repair," but this obligation extended only as far "as their respective responsibilities and rights . . . allow[ed]." The Star Tribune had "the non-exclusive right" to use the parking lot, but J & J maintained control over the parking lot in several respects. First, J & J was required to "provide general access to [the Star Tribune] and its invitees to the common

6

areas," including the parking lot, and to "make a reasonable effort to keep the common areas well maintained." Second, J & J was responsible for lighting the parking lot at night. Third, J & J was responsible for notifying the Star Tribune of any conditions in the parking lot that presented a "foreseeable danger" to the Star Tribune's invitees, and J & J was responsible for correcting those conditions. Fourth, J & J had the right to establish "reasonable rules for parking," and the Star Tribune was required to abide by those rules. Fifth, while the Star Tribune had the "right" to clear snow from the parking lot, it did not have any "obligation" to do so.

The Osmanskis argue that the Star Tribune owed John Osmanski a duty under the reasoning of *Conover v. N. States Power Co.*, 313 N.W.2d 397 (Minn. 1981). In *Conover*, Northern States Power Company (NSP), a utility company, owned and operated a power line. *Id.* at 399. NSP hired a construction company, as an independent contractor, to replace some of NSP's utility poles. *Id.* at 399-400. Conover was an employee of the construction company and was injured while he was trying to replace a pole. *Id.* The Minnesota Supreme Court held that, even though NSP retained no control over the project, it "may still owe a duty of care, *as a possessor of land*, to persons coming on the premises, including the *employees* of an independent contractor." *Id.* at 401 (emphasis added). *Conover* is inapposite because the Star Tribune was not a possessor of land and Osmanski was not an employee of Chanhassen Depot.

The Osmanskis argue that this court should impose a duty on the Star Tribune as a matter of public policy, relying on *Conover* and *Domagala v. Rolland*, 805 N.W.2d 14, 26 (Minn. 2011). This argument is not properly before this court because the Osmanskis

7

did not raise it below. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Moreover, "this court is limited in its function to correcting errors [and] it cannot create public policy." *LaChapelle v. Mitten*, 607 N.W.2d 151, 159 (Minn. App. 2000), *review denied* (Minn. May 16, 2000).

Because the Star Tribune was not a possessor of the land in question and therefore did not owe Osmanski a duty to keep the premises in a safe condition, the district court did not err by granting summary judgment to the Star Tribune on this ground.

## II. The Star Tribune did not assume a duty to select a distribution center location with adequate lighting.

The Osmanskis argue that the Star Tribune assumed a duty to select a distribution center location with adequate lighting. The Osmanskis do not argue that the Star Tribune assumed an ongoing duty to provide adequate lighting; they argue only that the Star Tribune assumed a duty to initially select a location with adequate lighting.

"[A] person may, by conduct, assume a duty where one did not previously exist and be liable for the failure to exercise due care in the performance of that duty." *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 494 (Minn. 1996). "Whether a duty has been assumed is a question of fact." *Walk to Emmaus*, 801 N.W.2d at 199 (footnote omitted). The rule for determining whether a duty is assumed that does not otherwise exist at common law is set forth in Restatement (Second) of Torts § 323 (1965):

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

8

> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

*Funchess*, 632 N.W.2d at 674.

While the Osmanskis did raise this issue below, the district court did not address it in the memorandum accompanying its summary-judgment order. On appeal, the Osmanskis contend that, "[b]y choosing the depot location for the depot managers, requiring the depot managers to operate out of that location, and requiring the carriers to load the newspapers in the parking lot, the Star Tribune assumed the duty of selecting a safe location for this activity."

Applying section 323 to the facts of this case, the Star Tribune's mere selection of the distribution center location cannot reasonably be deemed to be the undertaking of a "service[]" "render[ed]" to Osmanski that the Star Tribune should have recognized was "necessary for the protection" of Osmanski. The Star Tribune's selection of the property was simply one step in establishing a new distribution center for its business.

Courts are "generally cautious and reluctant to impose a duty to protect between those conducting business with one another." *Id.* Because the Star Tribune did not assume a duty to select a distribution center location with adequate lighting, the district court did not err by granting summary judgment to the Star Tribune on this ground.

**III.    Chanhassen Depot did not assume a duty to control ice in the parking lot.**

The Osmanskis argue that Chanhassen Depot assumed a duty to control ice in the parking lot. "Whether a duty has been assumed is a question of fact." *Walk to Emmaus*,

9

801 N.W.2d at 199 (footnote omitted). The rule for determining whether one party has assumed another party's duty to a third party is set forth in Restatement (Second) of Torts § 324A (1965):

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to [perform] his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Walsh v. Pagra Air Taxi, Inc.*, 282 N.W.2d 567, 570–71 (Minn. 1979).

The district court concluded that Chanhassen Depot did not assume a duty to control ice in the parking lot because: (1) Chanhassen Depot's alleged inaction did nothing to increase the risk of harm; (2) Chanhassen Depot did not completely assume the duty; and (3) even though J & J generally relied on Chanhassen Depot and Chaska Depot to control ice in the parking lot, J & J was ultimately responsible for doing so.

In October 2010 J & J contracted with Southwest Lawn & Snow (Southwest) for snow-removal service on the property. Viewed in the light most favorable to the Osmanskis, the following facts were established during discovery: the owner of J & J told the owners of Chanhassen Depot and Chaska Depot that they should directly contact Southwest if they thought the parking lot was icy and needed to be salted or sanded; the owner of J & J never contacted Southwest for salting or sanding; and the owner of

10

Chanhassen Depot contacted Southwest twice from 2010 to 2013 to request that the parking lot be salted or sanded.

Applying section 324A to the facts of this case, Chanhassen Depot appears to have gratuitously undertaken to render services to J & J for the protection of Osmanski because the owner of Chanhassen Depot called Southwest on two occasions to request ice control. This would satisfy the section's general requirement. But we conclude that Chanhassen Depot did not assume a duty to control ice in the parking lot because the Osmanskis cannot satisfy any of the three subsections of section 324A.

Under section 324A(a), Chanhassen Depot's alleged "failure to exercise reasonable care" must have "increase[d] the risk of such harm." A failure to decrease the risk of harm does not give rise to liability. *See Walk to Emmaus*, 801 N.W.2d at 201. By allegedly not requesting ice control in the parking lot on the night Osmanski was injured, Chanhassen Depot did not *increase* the risk of harm. It merely failed to decrease the risk of harm. Therefore, no liability may be imposed under subsection (a).

Under section 324A(b), Chanhassen Depot must have "undertaken to perform a duty owed by [J & J] to [Osmanski]." "[T]o impose liability under section 324A(b), one who undertakes a duty owed by another to a third person must *completely* assume the duty." *Id.* at 202 (emphasis added). Even if the owner of Chanhassen Depot called Southwest on two occasions to request salting or sanding, this falls well short of a complete assumption of J & J's duty to maintain the parking lot and correct any dangerous conditions there. No liability may be imposed under subsection (b).

11

Under section 324A(c), the harm must have been "suffered because of reliance" by J & J upon Chanhassen Depot's undertaking. We agree with the district court that J & J's general reliance upon Chanhassen Depot to contact Southwest when the parking lot needed salting or sanding does not show that Chanhassen Depot assumed J & J's duty. Under the lease, J & J was ultimately responsible for keeping the parking lot in a safe condition. J & J could not assign this duty by implication to an independent contractor of one of its tenants. No liability may be imposed under subsection (c).

Because Chanhassen Depot did not assume a duty to control ice in the parking lot, the district court did not err by granting summary judgment to Chanhassen Depot.

**Affirmed.**